**Sandy Lee McNEIL, Appellant,**

v.

**STATE OF NORTH CAROLINA and Major William C. Brown, Appellees.**

**No. 10557.**

United States Court of Appeals Fourth Circuit.

Argued June 21, 1966.

Decided Sept. 8, 1966.

**314**

———◆———

Walter Erwin Fuller, Jr., Raleigh, N. C., Court-assigned counsel, for appellant.

Theodore C. Brown, Jr., Asst. Atty. Gen. of North Carolina (Thomas Wade Bruton, Atty. Gen. of North Carolina, on brief), for appellees.

Before BOREMAN, BRYAN and J. SPENCER BELL, Circuit Judges.

J. SPENCER BELL, Circuit Judge:

The crucial question raised by this appeal is whether the petitioner waived his constitutional right to indictment and to trial by juries from which Negroes had not been systematically excluded. In June of 1959, the petitioner was convicted of second degree burglary in a jury trial in Lenoir County, North Carolina, and sentenced to 33 years in the state penitentiary. The issue of systematic exclusion of Negroes from the grand and petit juries of Lenoir County was not raised before or at his trial. A direct appeal was withdrawn. In 1963, a post-conviction proceeding in the state courts, which was dismissed after plenary hearing, did not raise this issue.[1] In 1964, in the case of Arnold v. North Carolina, 376 U.S. 773, 84 S.Ct. 1032, 12 L.Ed.2d 77, the Supreme Court reversed a conviction on the ground that there had been systematic exclusion of Negroes from the lists from which the juries of Lenoir County were chosen. The period covered by the testimony in that case included the time when this petitioner was tried. The district court, without requiring the state to answer or holding a plenary hearing, assumed the fact of systematic exclusion but pointed out that the record before him showed neither a motion to quash the indictment nor a challenge to the petit jury array. The court also pointed out that it had been the law of the land for almost eight decades that discrimination against Negroes as to jury service was unconstitutional; that petitioner's counsel, a resident of the community, was aware of the local practice and that the petitioner himself, a local resident must have been aware of the custom and was, therefore, in a position to call the matter to the attention of his counsel if systematic discrimination existed.[2] The court concluded that since both the petitioner and his counsel were chargeable with knowledge of any violation of the petitioner's constitutional rights, their

---

1. Although the district court erroneously found that the issue was raised in the state post-conviction proceeding hearing, counsel for the petitioner frankly concedes that it was not.

2. It could be argued that these facts were equally well known to court and prosecution and would require them, at the least, to procure an affirmative waiver before proceeding to trial. But more than that, we are impressed with Judge Griffin Bell's statement in *Cobb*, infra, that it is unfair to force the Negro defendant to the hard choice of demanding his rights at the price of antagonizing his triers.

failure to raise the issue at the trial constituted a waiver of the privilege. We hold that this is not the proper standard for deciding this issue.

In Johnson v. Zerbst, 304 U.S. 458, at page 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), the Court defined a waiver as "an intentional relinquishment or abandonment of a known right or privilege." In that opinion, the Court reminded the bench and the bar that every reasonable presumption against a waiver of fundamental constitutional rights should be indulged. Again, in Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962), the Court pointed out that mere silence of the record raised no presumption of waiver, nor should waiver be found in the absence of some affirmative conduct on the part of a defendant evidencing a deliberate and conscious rejection of a constitutional guarantee. The Court said: "Where, as in this case, the constitutional infirmity of trial without counsel is manifest, and there is not even an allegation, much less a showing, of affirmative waiver, the accused is entitled to relief from his unconstitutional conviction." Id. at 517, 82 S.Ct. at 890.

It remained for the Court in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963), to restate in emphatic language what it had said about waiver in earlier decisions. Mr. Justice Brennan, writing for the Court in this landmark decision, declared that:

"The classic definition of waiver enunciated in *Johnson* v. *Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate bypassing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits * * *. At all events we wish it clearly understood that the standard [of waiver] here put forth depends on the *considered choice of the petitioner*. * * * A choice made by counsel not participated in by the petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question." 372 U.S. at 439, 83 S.Ct. at 849. (Emphasis added.)

We cannot agree that the failure to object at his trial to the jury's composition was the considered choice of Sandy Lee McNeil. There is no evidence which shows that Sandy Lee McNeil, after intelligent consultation with his attorney, understandingly and knowingly forewent the privilege of being indicted and tried by constitutionally selected juries. In short, given the Fay v. Noia standard, there is no basis of support for the conclusion that Sandy Lee McNeil waived the fundamental constitutional right he now asserts. We hold, therefore, that there was no intentional relinquishment of a known right, and for the state to subject a defendant to this situation amounts to a denial of due process and equal protection of the law guaranteed by the Fourteenth Amendment. Cobb v. Balkcom,[3] 339 F.2d 95 (5 Cir. 1964).

One of the primary cases upon which the court below relied was this court's decision in United States ex rel. Jackson v. Brady, 133 F.2d 476, cert. denied, 319 U.S. 746, 63 S.Ct. 1029, 87 L.Ed. 1702 (1943). That case involved an appeal by two Negroes from the district court's dismissal of their petitions for writs of ha-

---

3. *Cobb*, which deals with this problem of systematic discrimination, carefully reviews the authorities and sets forth, we think, an excellent statement of the existing law on the question.

beas corpus. The two defendants charged that there had been racial discrimination in the selection of the grand jury which indicted and the petit jury which tried and convicted them. No objection to the method of selection of the grand jurors was made at any time during the state court proceedings, and the objection to the composition of the petit jury took the form of only a general challenge to the array.

When the *Brady* case was before the lower court, the district judge took evidence on the jury discrimination point and found as an ultimate fact that there had been no intentional and systematic exclusion of Negroes from the juries which considered the charges against the defendants. 47 F.Supp. 362, 366 (D.Md. 1942). On appeal this court sustained the district court's factual finding. Thus, no discussion of waiver was necessary for disposition of the *Brady* case. The opinion does, however, contain dicta on that point upon which the district court relied. We think it clear that subsequent decisions of the Supreme Court which have elaborated upon the principles laid down in Johnson v. Zerbst, supra, no longer make it possible for this court to be guided by the dicta in the *Brady* decision.

Normally, under these circumstances, where the respondent has been given no opportunity to reply to the petition for a writ of habeas corpus we would remand for that purpose, and for a plenary hearing. However, here the Attorney General of North Carolina has filed a brief and argued the case in this court. This brief concedes that the *Arnold* case findings cover the same county and the time during which this petitioner was tried. In short, he does not seriously question the fact that systematic exclusion of Negroes from the juries of Lenoir County existed when petitioner was indicted and tried, but instead raises the issues of waiver and exhaustion of state remedy. Yet the brief itself sets forth the law of North Carolina which holds that any objection to a jury must be raised prior to entry

upon the trial of the case on its merits or deemed to be waived. We quote:

> "In North Carolina, in criminal procedure, to question the make up and selection of a jury, or grand jury, the defendant, *before* the entry of the plea, must make his motion to quash, stating his reason (systematic exclusion) and he may substantiate same by presenting evidence, and making out a prima faciae case, then the burden shifts to the State to prove otherwise. If this procedure is not followed, it is deemed a waiver, as the proper time to question same is before the entry of the plea. (See: State vs. Perry, 248 N.C. 334, 103 S.E.2nd 404, (1957); State vs. Perry, 250 N.C. 119, 108 S.E.2nd 447, (1959), cert. dnd., 361 U.S. 833, [80 S.Ct. 83] 4 L.Ed.2nd 74, (1959); State vs. Covington, 258 N.C. 495, 128 S.E.2d 822, (1962); State vs. Wilson, 262 N.C. 419 [137 S.E.2d 109], (1964); State vs. Lowry, 263 N.C. 536 [139 S.E.2d 870], (1965); State vs. Inman, 260 N.C. 311 [132 S.E.2d 613], (1963).)" Appellee's Brief, p. 4.

The brief also concedes that North Carolina's post-conviction procedure act (N.C.General Statutes § 15–217) expressly bars a petitioner from raising in a subsequent petition for relief an issue which was available to him at the time of a prior petition. Counsel for the state now argues before us that in spite of the express wording of the North Carolina statute on post-conviction relief, the courts of that state will hear subsequent petitions raising issues available at the time a previous petition was filed. Were it not that the procedural case law of the state cited to us in the Attorney General's brief clearly bars the petitioner from relief because of his failure to raise the issue of systematic exclusion at or before his trial, we might consider remanding to the district court with instructions to retain jurisdiction until the petitioner had again sought relief in the state courts. Since, however, the cited state law clearly prohibits relief, we must hold that the petitioner now has no rights available under the state law which re-

quire exhaustion. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822 (1963).[4] The district court is directed to grant the writ subject to the state's right to retry the petitioner within a reasonable time.

Reversed and remanded.

4. The writ of habeas corpus historically has been and should be today "a swift and imperative remedy in all cases of illegal restraint or confinement."

This prisoner has been confined for seven years under a constitutionally invalid sentence.