Patrick Gordon **PATTERSON**, Appellant,

v.

**UNITED STATES of America,**
**Appellee.**

No. 18795.

United States Court of Appeals
Eighth Circuit.

Dec. 4, 1967.

---

Patrick Gordon Patterson filed brief pro se.

F. Russell Millin, U. S. Atty., and Bruce C. Houdek, Asst. U. S. Atty., Kansas City, Mo., filed brief for appellee.

Before VOGEL, Chief Judge, and MATTHES and BLACKMUN, Circuit Judges.

BLACKMUN, Circuit Judge.

Patrick Gordon Patterson appeals from the denial by the district court of his first post-conviction motion under 28 U.S.C. § 2255.

On February 11, 1966, Patterson, then age 21, pleaded guilty to two counts of a twelve count grand jury indictment charging mail theft and forgery of government checks, in violation of 18 U.S.C. §§ 1708, 495, and 2. Three other young men named in the same indictment also then pleaded guilty to certain counts.

On February 25, after presentence investigation, the district court, pursuant to the provisions of the Federal Youth Corrections Act, 18 U.S.C. § 5010(e),

committed Patterson to custody for observation and study. In May concurrent three year sentences on the two counts were imposed but execution of all except six months of these was suspended and the movant was placed on probation for the remaining thirty months. In October the probation was revoked and the suspended portions of the sentences were reinstated.

Patterson by his motion makes a number of allegations which, it would appear, are intended primarily to focus on the issue of voluntariness of his plea of guilty. Some of these allegations might not, under our prior decisions, be appropriately raised at this time if they were in a § 2255 motion following conviction upon a plea of not guilty. Warren v. United States, 311 F.2d 673, 675–676 (8 Cir. 1963); Cox v. United States, 351 F.2d 280 (8 Cir. 1965); Craig v. United States, 376 F.2d 1009 (8 Cir. 1967). Compare United States v. Sutton, 321 F.2d 221, 222–223 (4 Cir. 1963); Gaitan v. United States, 317 F.2d 494 (10 Cir. 1963). See Kuhl v. United States, 370 F.2d 20, 21–22 (9 Cir. 1966); Thornton v. United States, 368 F.2d 822 (D.C. Cir. 1966); De Welles v. United States, 372 F.2d 67, 68–69 (7 Cir. 1967), cert. denied 388 U.S. 919, 87 S.Ct. 2140, 18 L.Ed.2d 1365. But there was a plea of guilty here and, out of an excess of caution, we, as did the trial court, review each and all of the movant's asserted grounds.

Judge Hunter set Patterson's motion for a full evidentiary hearing. In its hearing order the court, in an obvious effort to be of the greatest possible assistance, appropriately listed Patterson's claims as ten in number and recited that these "and all others that movant Patterson wishes to present shall be heard and determined". The ten (the quoted material is taken from Patterson's motion) are:

1. The movant "was not informed of his rights when he was arrested".

2. He was "denied and refused counsel even after requesting same".

3. The "arresting officers had no warrant and did not identify themselves".

4. Statements made by Patterson "at the time of original interrogation were made under duress and coercion without benefit of counsel".

5. He "was represented by counsel who was incompetent and who displayed utter disregard for his client's rights", particularly in waiving a preliminary hearing, grand jury indictment and trial by jury, and in counseling a plea of guilty.

6. The "arrest was without warrant or probable cause and was invalid."

7. "Any search made was invalid".

8. He was illegally detained by the arresting officers and for an unreasonable time in order to force him to confess. The officers promised he would be allowed to go free for the holidays if he confessed. He was thereby coerced into making a confession.

9. His post-arrest statements and confessions were coerced and not voluntary.

10. His attorney entered a plea of guilty on his behalf "without consulting with the applicant, then and there the defendant and did so without the knowledge and prior consent of the applicant".

Procedure in forma pauperis was allowed and, with Patterson's consent, J. Whitfield Moody, public defender in Kansas City, was appointed as attorney for the movant in the present § 2255 proceeding. Patterson was returned to Kansas City for the hearing on his motion. This took place February 2 and 3, 1967. He took the stand. After the hearing his motion was denied. Although the court felt that Patterson's contentions were without merit, it refrained from certifying that the appeal was not taken in good faith. It granted leave to appeal in forma pauperis, certified that the proceeding was not frivolous, and, pursuant to the authority granted by 28 U.S.C. § 753(f), further certified that a transcript was needed to decide the issues presented and directed payment by the United States of the reporter's fee for the preparation of the transcript.

We have reviewed the original district court file for the criminal proceeding and the transcripts of its several hearings. This examination reveals:

1. Alex Peebles, Patterson's counsel in the criminal proceeding, was retained and not court-appointed. Mr. Peebles represented Patterson and, as well, McClanahan and Mueller, two of his three co-defendants. The fourth, Lightner, was represented by separate retained counsel.

2. The indictment was in 12 counts. The four defendants were not all named in all counts. Only Patterson was named in all. McClanahan was named in 9, Mueller in one, and Lightner in three.

3. At the initial hearing on February 11, 1966, Mr. Peebles acknowledged in open court that he had received a copy of the indictment; that he had had ample opportunity to discuss with his clients the charges filed against them; and that he was ready to proceed with arraignment.

4. A plea of not guilty was entered for Patterson under Count 1 of the indictment. Counts 2 and 3 were then read. The assistant United States attorney, before Patterson's plea to those counts, advised him that the maximum sentence under the second count (§§ 1708 and 2) was five years' imprisonment or $2,000 fine, or both, and under the third count (§§ 495 and 2) was ten years' imprisonment or $1,000 fine, or both; that, due to his age, if the court accepted a plea of guilty or if he were found guilty, he could be incarcerated, under certain circumstances, pursuant to the Federal Youth Corrections Act; and that this could mean imprisonment up to six years. Patterson stated that he understood this. Patterson then personally pleaded guilty to the second and third counts. He answered in the negative the

court's questions whether anyone had made any threats or promises to him in order to make him plead guilty and whether anyone had represented to him what sentence the court would impose. He gave a positive answer to the question whether he was pleading guilty because he "actually did commit the offense alleged in the indictment". His attorney stated that he concurred in the pleas of guilty to the two counts. Pleas of not guilty were entered by Patterson on the indictment's remaining counts.

5. Patterson gave affirmative personal answers in response to questions asked by the court whether he had had full opportunity to talk to his attorney about the matter, whether he was satisfied that the attorney had given him the best advice of which he was capable, whether the attorney had explained that he did not have to enter a plea of guilty and could plead not guilty and have a jury trial on each charge, whether he understood that by entering a plea of guilty he was waiving his right to a jury trial, and whether this was what he wanted to do. The court also inquired of Patterson whether there was "anything about any of this that you don't understand" and whether there was any question he had "at this time about any part of this". He said he did not.

6. Two weeks later, on February 25, further proceedings were had. Patterson and his attorney were present. The presentence investigation report was at hand. Allocution was allowed. The attorney expressed a hope that the court would consider the Federal Youth Corrections Act. The court at this time expressed "considerable doubt" about utilizing that procedure for Patterson. Nevertheless it committed Patterson to the custody of the Attorney General for the observation and study authorized by 18 U.S.C. § 5010(e).

7. On April 29 Patterson and his attorney were again before the court. At this time the report called for by § 5010 (e) had been received. Patterson, when asked whether he had anything to say, stated "I know that if I get probation that I can really live up to it. I am really sincere about it". The court, after expressing concern about the appropriate disposition of the matter, about Patterson's being the ringleader, and about his need for a closely structured environment, postponed sentence for a week.

8. When the case was called one week later it was continued for an additional week because of the need for Patterson's attorney to attend a funeral. Patterson stated that this postponement was agreeable with him.

9. On May 13 the matter was before the court again. Patterson and his attorney were present. This time, Patterson, in response to a direct inquiry, stated to the court that he had nothing to say. The court reviewed his presentence report with him and his counsel. It observed that it was being less severe than the report recommended and that it was doing what it did with some hesitation. The sentences were then imposed. The court also observed, "Your attorney has done a good job for you, I will say that too".

10. The government then asked leave to dismiss the remaining ten counts against Patterson. This request was granted.

11. On October 7, 1966, Patterson, with Mr. Peebles, again appeared before Judge Hunter. The government moved to revoke his probation on the grounds that (a) in August Patterson issued a bad check for $266 to a dealer as a down payment on an automobile; (b) on or about September 1, without permission from his probation officer, he left the district and went to New York City; (c) he was arrested in New York on September 16 but escaped; (d) on August 31, 1966, a number of checks were stolen from the mail and passed and two of these bore Patterson's fingerprints; and (e) when the automobile was returned to the dealer a stolen license plate which had been taken from the mails was found under its front seat. Patter-

son conceded in open court that he had left Missouri to go to New York and did so without permission and with the knowledge that it was a violation of his probation; that he was arrested by a postal inspector in New York City on a probation violation warrant; that he broke away from the inspector after he had been placed under arrest; that he did this because he wanted to tell his fiancee what was happening; that he came back to Kansas City and several days later turned himself in; that he had given the check to the automobile dealer as an IOU with the explanation that he had no bank account but the dealer sent the check in anyway; that the license plate was not, to his knowledge, stolen from the mail; that, however, he "knew of the stolen license plate from a person who borrowed my car" and he "didn't have the money to get the license plate right at this particular moment"; that he had heard that the checks were stolen and remembered someone showing them to him but he did not want to have anything to do with them; and that he went to New York with his fiancee to get married and then return to Kansas City. The court observed that the facts so admitted disclosed that Patterson had violated conditions of his probation in several respects. It entered an order revoking the probation.

So much for the original criminal proceeding and its several chapters. It is obvious from the foregoing recital that many of Patterson's claims, asserted in the present § 2255 proceeding, are factually at variance with the formal record of the criminal proceeding. The record and his own statements give the lie to the assertions he now advances in his § 2255 motion that he was denied counsel; that his statements were under duress; and that the plea of guilty was entered for him and without his consent and knowledge. The record of the criminal matter, cold as it may be for us, discloses that Patterson's retained attorney was intelligent, competent and careful in advancing his client's cause and in vigorously presenting to the court a persuasive plea for leniency. It is with poor grace that Patterson now claims the contrary.

Nevertheless, as we have noted, Judge Hunter scheduled and held a hearing on the § 2255 motion. This was carefully conducted and took place over two trial days. Patterson, with the help of his new court-appointed attorney, told his story. In addition to the ten grounds outlined by the court he asserted an eleventh, namely, that he had not seen a copy of the indictment until immediately prior to the entry of his plea of guilty. (In his brief here he adds a twelfth and a thirteenth, namely, that "all statements" against him are fraudulent and false and that there was unnecessary delay before he was taken before a United States Commissioner). He now testified in support of his factual allegations. He said that he did not knowingly enter a plea of guilty; that he did not actually know what the charge against him was; that the postal inspectors told him that after he confessed he could have a lawyer; that the Secret Service men told him the same thing; that he was told he was to be considered as under arrest; that he wished to waive the attorney-client privilege and talk about what had happened between him and Peebles in regard to his case; that Peebles told him they would go in and plead guilty; that he did not want to plead guilty and told McClanahan so; that he told Peebles he did not feel he was guilty and that he wanted a jury trial; that McClanahan and Mueller felt the same way; that he had almost no discussion with Peebles about the facts of the charge; that he did not see the indictment until the counts were read to him in court; that Peebles had not gone over it with him; that he told Peebles he had nothing to do with the check to which Count 3 referred and could not understand what Count 2 was about; that Peebles did not tell him what the penalty might be; that neither the government attorney nor the court advised him of the possible penalty before the pleas of guilty were entered; that he was in the custody of the postal inspectors for several hours and was not

permitted to call an attorney even though he asked for one; that he considered himself under arrest when he went to the Federal Building with the inspectors; that at his home one of the inspectors went upstairs to his room; that he did not give the inspector permission so to search the house; that there was no reason for him to plead guilty; that when the inspectors came to his home they did not tell him who they were; that he told them he wanted to call his mother and then a lawyer but they refused; that the signature and initials on the statement taken by the postal inspectors were not his; that the inspector told him he could not leave town for any length of time; that the Secret Service agent did not advise him of his rights; that he did not mention these things at any of the hearings in the criminal proceeding because he was afraid or did not have them then in mind; and that he had been in court before on minor incidents and fined five or six times.

But Patterson's testimony stands naked and alone. Much of it, as we have already noted, is categorically at variance with the very record of the criminal proceeding. And the balance of it is flatly controverted by the testimony of his codefendants, McClanahan (called as a witness by Patterson), and Mueller, of attorney Peebles, of postal inspectors Creighton and Studt, and of Secret Service agents Martinez and Lamb. We need not describe this lengthy and detailed testimony. With its consistent and positive denial of Patterson's tale, it affords a solid basis for the trial court's decision on what are issues of fact to which the clearly erroneous standard for appellate review applies. Judge Hunter spoke in such phrases as "I find Mr. Patterson totally untruthful"; "Mr. Patterson's incredulous statements"; "a pure fabrication by him"; "his testimony is not true * * * it is contrived"; and "this is just proof positive of his ability to misstate matters". Here again, as Judge Van Oosterhout said, in speaking recently for this court in Butler v. United States, 384 F.2d 522 (8 Cir. 1967),

"The trial court's detailed findings, dictated into the record, adequately demonstrate that full and fair consideration has been given to all issues raised by the defendant. Such findings are supported by substantial evidence."

That in itself is an end to this § 2255 appeal.

We do not hesitate to observe, however, that were these issues to be resolved by us in the role of factfinders rather than considered upon review as an appellate court, we would inevitably arrive at the same result reached by Judge Hunter. We are impressed, even on the cold record, with the character and consistency of the testimony of all the witnesses other than Patterson, with the patient consideration given Patterson by the investigating officers, with the careful and repeated delineation to him of his rights, and with the court's sympathetic regard for his predicament. We come away with the firm conviction that Patterson has little, if any, regard for truth, that he is inclined to believe whatever imagination and convenient rationalization for his acts may impulsively suggest to him; that he would blame anyone but himself for his difficulties and then refuse to face up to his responsibilities; that he readily contrives an excuse, however thin and transparent it may be; and that he feels that if he is just active enough he will eventually obtain relief. Patterson needs to grow up.

Despite Judge Hunter's cautious certification that this proceeding was not frivolous, it comes close, in our view, to being precisely that. Even in this day when it is fashionable and imperative to check and double-check every criminal proceeding, one wonders just how far retained and court-appointed counsel, law enforcement officials, and trial and appellate courts, already enough concerned with other litigation of real merit and substance, are to be compelled to spend time and to waste effort and energy upon matters so insubstantial as this. Patterson, of course, has nothing to lose and we suspect that he pursues

happily his policy of indiscriminate attack upon the integrity of all those concerned with him.

We have dealt with this appeal in far greater detail than it deserves. It deserves peremptory dismissal. We make this effort and taken this trouble so that there may be a clear and permanent record of our attitude toward Patterson's irresponsibility and the claims he makes but cannot prove.

Affirmed.