443 P.2d 1020

Emma VELASQUEZ, for and in behalf of her son, Steven Ernie Velasquez, Plaintiff and Appellant,

v.

Claud PRATT, Superintendent, Utah State Industrial School, Ogden, Utah, Defendant and Respondent.

No. 11118.

Supreme Court of Utah.

July 18, 1968.

---

1. State v. Geurts, 11 Utah 2d 345, 359 P.2d 12.

Ronald N. Boyce, Salt Lake City, for plaintiff and appellant.

Phil L. Hansen, Atty. Gen., Warren M. Weggeland, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

CROCKETT, Chief Justice:

Steven Velasquez appeals from a judgment of the District Court of Salt Lake County in a habeas corpus proceeding which denied his release from the Utah State Industrial School.

In November 1966 Steven, age 14, was found to be a delinquent child because of various acts of anti-social conduct and committed to the State Industrial School, where he would remain during his minority or until qualified for release. He remained there during the school year, and about June 1, 1967, was released on probation to the custody of his mother. On August 8, 1967, he was brought in on a hearing concerning revocation of probation accused of other acts of delinquency, the principal one of which was making an assault in which another boy was cut with a broken bottle. As a result of hearings before it, the juve-

nile court, on October 12, 1967, again committed Steven to the State Industrial School, from which commitment he sought release in this proceeding.

The appellant appears to proceed upon the erroneous premise that on a hearing for violation of probation a person is entitled to the same protections the law affords one newly accused of an offense and before he is found guilty thereof. In the case of State v. Bonza, 106 Utah 553, 150 P.2d 970, and also in the more recent one of Baine v. Beckstead, 10 Utah 2d 4, 347 P.2d 554, this court dealt with the question of revocation of probation, indicating that when a person has been found guilty of an offense and sentenced, he is in quite a different status than he is before conviction. He is deemed to be actually serving the sentence imposed, but under prescribed conditions which he has agreed to comply with. He is certainly not entitled to all of the protections accorded one accused of crime in the first instance. If he could insist on those rights, from the incipient protections relating to arrest, through the presumption of innocence, the right of counsel and trial by jury, the court might as well turn him completely free in the first place and not bother about probation. Such requirement would tend to destroy the system which has proved so useful and beneficial in penology, because judges would be very reluctant to grant probation. This is particularly true in juvenile courts where the court is sort of a substitute parent and the proceedings, as provided by our statutes, are not criminal in nature but are inquiries in the interest of the juvenile. See Sec. 55-10-63, et seq. and Sec. 55-10-105, U.C.A.1953; see Pee v. United States, 107 U.S.App.D.C. 47, 274 F.2d 556, 561, listing numerous jurisdictions having similar laws; also our discussion In re Lindh, 11 Utah 2d 385, 359 P.2d 1058.

Notwithstanding what we have just said, it is our opinion that justice requires that a person on probation should not be compelled to live in dread of being recommitted on the whim or caprice of a probation officer, or even of a court. Ordinary principles of fair play demand that he should be advised of the ground upon which revocation of probation is sought, and to have a hearing on whether his probation should be revoked, as explained in the Baine case referred to above.

The protections just mentioned were afforded in the instant case. The suggestion that Steven and his mother were not aware that the hearing on probation revocation might deprive him of his liberty is hardly worthy of comment. He had previously been in the State Industrial School; and there is no reasonable possibility that they did not know the possible consequences of the hearing. See In re Lindh, supra, where the same contention was made and we stated:

Anyone with a modicum of common sense would know that if he was found guilty of violating his probation the court might commit him. The appellant and his parents must be deemed to have so understood.

■ As to the complaint about not being afforded the right of counsel: The record indicates that in both this and the original proceeding against him Steven and his mother were advised of the right to be represented by an attorney. But they made no indication to the court that they wanted one. We are cognizant and appreciative of the importance of the right to counsel, and to be advised concerning that right. But the courts of this state have never gone so far as to say where one is so advised and gives no indication that he wants an attorney, the court has a duty to persuade him to have one. See statement by Justice Ellett in Dyett v. Turner, 20 Utah 2d 403, 439 P.2d 266, 267 (1968), and authorities he cites therein.

■ In regard to the hearing on revocation of probation which we have discussed above, and also looking back to the proceeding in which Steven was originally committed, there are some other basic propositions of law which stand in the way of his contentions in his habeas corpus proceeding. The first is that habeas corpus is not and cannot properly be used in the place of a regular appellate review. As to any

claimed error or irregularity which was known or should have been known to the appellant at the time of judgment, there was first an obligation to call it to the trial court's attention and seek remedy; and that failing, there was next a duty to seek review and correction on appeal. If that is not done within the time allowed by law, the judgment becomes final and not subject to further attack for any matters which could have been so reviewed on regular appeal. See Bryant v. Turner, 19 Utah 2d 284, 431 P.2d 121, noting discussion by Justice Murphy in Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356; and see also Ex Parte S.H., 1 Utah 2d 186, 264 P.2d 850.

■ The next proposition is that in the habeas corpus proceeding before the District Court the burden was upon the petitioner to prove the facts which would entitle him to relief. See McGuffey v. Turner, 18 Utah 2d 354, 423 P.2d 166 (1967); Workman v. Turner, 19 Utah 2d 1, 425 P.2d 402 (1967); Wilson v. Hand, 181 Kan. 483, 311 P.2d 1009 (1957); State v. Lopez, 79 N.M. 235, 441 P.2d 764, and cases therein cited. When the issues have been tried and the trial court has found them against him, we survey the record in the light most favorable to the findings and judgment; and we will not reverse if there is a reasonable basis therein to support the trial court's refusal to be convinced that the writ should be granted. See Seibold v.

Turner, 20 Utah 2d 165, 435 P.2d 289; Maxwell v. Turner, 20 Utah 2d 163, 435 P.2d 287, and authorities therein cited. In examining this record in the light of the rules just discussed, we have found no basis therein to persuade us that the District Court was in error in refusing to find that the juvenile court acted without jurisdiction or in excess of its authority or committed any impropriety of procedure which deprived appellant of due process of law.

Judgment affirmed. No costs awarded.

CALLISTER and ELLETT, JJ., concur.

TUCKETT, Justice (dissenting).

I dissent. The opinion of Mr. Chief Justice Crockett proceeds on the basis that the hearing before the juvenile court, on October 12, 1967, which resulted in the court committing Steven Ernie Velasquez to the State Industrial School for a second time was a hearing concerned with his violation of probation. My review of the record leads me to a different conclusion. As pointed out in the opinion of the Chief Justice, Steven was committed to the State Industrial School on November 7, 1966, and he was released by the School authorities in the summer of 1967. The power to return a student to the School for violation of the terms of his probation rests with the Public Welfare Commission and not with the court.[1]

My survey of the record indicates that during the year, 1967, Steven was accused of further delinquencies in the juvenile court which resulted in the second commitment. I am of the opinion that at the hearing on the new delinquencies the court failed to adequately inform Steven and his mother of their right to be represented by legal counsel. The record of the juvenile court indicates that at the outset the court made a statement in the following language: "The law specifies that the child can be represented by legal counsel. This is required." The transcript of the proceedings is silent as to the court advising Steven or his mother further about their right to counsel,[2] nor did the court inquire as to whether or not Mrs. Velasquez or her son had sufficient resources with which to employ counsel.

At the hearing before the juvenile court no witnesses were called to testify concerning the delinquencies charged against Steven. The record indicates that the court made its findings as to Steven's guilt solely from questions put to the boy by the court concerning the truth or falsity of the allegations contained in the petition. I can think of no other occasion where a boy, age 14,

1. Sections 64–68, U.C.A.1953. See also Ex parte S. H., 1 Utah 2d 186, 264 P.2d 850.

2. In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527, Sec. 55–10–96, U.C.A. 1953.

would be more in need of counsel, and this is especially true where the proceedings before the court might reasonably subject him to being deprived of his liberty for a period of years. I would reverse.

HENRIOD, J., does not participate herein.