Elmer Anthony **MERRILL**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1037.

Supreme Court of Alaska.

July 21, 1969.

232

David J. Pree, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., G. Kent Edwards, Atty. Gen., Anchorage, for appellee.

Before NESBETT, C. J., DIMOND, RABINOWITZ, BONEY and CONNOR, JJ.

BONEY, Justice.

Appellant has appealed from two orders of the superior court rendered in the course of post-conviction proceedings pursuant to Criminal Rule 35(b).[1] Both appeals will be decided together.

[1]. All of appellant's applications were filed before Crim.R. 35 was changed to its present form. Crim.R. 35(b) at the relevant times read as follows:

(b) Motion Attacking Sentnce. A prisoner in custody under sentence of the District Court for the District (Territory) of Alaska or the superior court of the State of Alaska claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution .or laws of the United States or the Constitution or laws of Alaska, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence or its successor, to vacate, set aside or correct the sentence.

A motion for such relief may be made at any time.

Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no re-

Appellant has been before this court on a previous occasion when his conviction of robbery was sustained upon appeal. Merrill v. State, 423 P.2d 686 (Alaska 1967). Since the appeal was decided, appellant has filed numerous petitions and motions seeking post-conviction relief. These petitions and motions were consolidated in the superior court and treated as a Criminal Rule 35(b) post-conviction proceeding with multiple issues. Counsel was appointed for appellant and exhaustive hearings were held over the course of several months. All of the issues raised by appellant in these hearings were decided adversely to him in a memorandum of decision of the superior court rendered on June 27, 1968. Appellant has appealed from that decision to this court mainly on the question of the existence of probable cause for his arrest. This appeal, No. 688, from the superior court's decision denying relief on all issues after extensive hearings, constitutes appellant's first appeal.

The second appeal, No. 1037, arises out of the superior court's denial without hearing of an additional application for post-conviction relief. Approximately one month after the superior court rendered its opinion which is the subject of appeal No. 688, appellant filed an "Amended Petition for Habeas Corpus." This petition was evidently intended to amend an earlier petition of October 20, 1967, which had been

treated as a Criminal Rule 35(b) motion. The amended petition was denied by the superior court without a hearing. The amended petition raised several grounds of error which had been decided previously, but the petition also contained one new allegation of error which had never been raised before; systematic, unlawful exclusion of certain classes of persons from the jury at appellant's trial. Pursuant to the policy declared in Thompson v. State, 412 P.2d 628, 636 (Alaska 1966) the amended petition will be treated as a successive application for post-conviction relief pursuant to Criminal Rule 35(b). The sole question in appellant's second appeal is whether it was proper for the superior court to deny, without a hearing on the merits, appellant's claim of unlawful discrimination in the selection of the jury at his trial, which claim was raised by appellant for the first time after the trial, after the appeal from conviction, and after lengthy post-conviction hearings had been held.

### I.

█ After a review of the entire record concerning appellant's appeal, No. 688, from the decision of the superior court of June 27, 1968, denying post-conviction relief, we affirm all of the findings of fact of the superior court. On appeal from a Criminal Rule 35(b) proceeding, the factual findings of the lower court are judged by

lief, the court shall cause notice thereof to be served upon the State District Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate.

A court may entertain and determine such motion wtihout requiring the production of the prisoner at the hearing.

The sentencing court, or its successor, shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

An appeal may be taken to the supreme court from the order entered on the motion as from a final judgment on application for a writ of habeas corpus.

An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this subdivision, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or its successor, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

the same criterion as the findings made in a judge-tried civil case.[2] We are not convinced that any of the findings of fact in this case are clearly erroneous or that a mistake, has been committed by the superior court.[3] Furthermore, the legal conclusions reached by the superior court are correct.

The superior court found "At the time Lt. Nix signed the complaint, he had probable cause to believe that Merrill had participated in the robbery at the Edgewater Motel." This finding which is the subject of this appeal is supported by the following evidence: the repeated testimony of Lieutenant Nix, given during the post-conviction hearings, that an accomplice, James Glenn, identified Merrill from a photograph before the complaint was signed on June 15, 1965. Although Lieutenant Nix's memory was hazy as to whether one or two pictures were shown to Glenn, and as to exactly when before the signing of the complaint the identification took place, his testimony stands uncontradicted that before the complaint was signed Glenn had identified Merrill from a photograph. Also Trooper Hagen testified that on June 15, 1965, he personally went to Glenn and showed him a picture of appellant, whom Glenn then identified. Trooper Hagen could not say when on June 15 the identification took place; however, it must have been prior to 5:45 p. m., when Trooper Hagen dictated his report describing Merrill as a participant in the robbery. Since the complaint was signed at approximately 3:30 p. m., on June 15, it is quite unlikely that the complaint was signed without the identification and without probable cause, and then in the next two hours the identification was made giving rise to probable cause for appellant's arrest. Further support to the finding of

probable cause is found in Lieutenant Nix's testimony that investigation of certain leads was conducted prior to the signing of the complaint and that these leads implicated appellant. Thus there was abundant evidence adduced at the hearings to support a finding of probable cause for arrest.

Both parties to this appeal have not dealt with the question of the burden of proof at the post-conviction hearing. Appellant in his brief states that the record fails to show or substantiate the state's theory of probable cause. Appellant's argument is not well-founded. If the record of a post-conviction hearing is silent with regard to an issue and the witnesses are unable to remember, the state has not failed to substantiate its case; to the contrary, the prisoner has failed in his collateral attack on the judgment of conviction. To secure relief in a habeas corpus proceeding, now largely superseded by motions under Criminal Rule 35, the petitioner has the burden of alleging and proving by a preponderance of the evidence all the facts necessary to overturn the prior judgment of conviction.[4] This rule prevails in the federal court system,[5] and is also manifested in our new Criminal Rule 35(h), which states that such motions are governed by civil rules; thus the proponent of an issue must establish the necessary facts by a preponderance of evidence.

When the above rule is applied to the present case it is apparent that at the hearings appellant had the burden of showing that Lieutenant Nix did not have probable cause when he signed the complaint against appellant. Upon appeal, appellant does not contend that the record demonstrates affirmatively an absence of probable cause; instead he argues that the record does not show that Lieutenant Nix did have prob-

2. Patterson v. United States, 385 F.2d 728, 733 (8th Cir. 1967); Dillane v. United States, 127 U.S.App.D.C. 377, 384 F.2d 329, 330 n. 5 (1967); Weathers v. United States, 367 F.2d 394, 395 (9th Cir. 1966).

3. Knox v. Pickles, 451 P.2d 347, 349 (Alaska 1969).

4. In re Hawley, 67 Cal.2d 824, 63 Cal. Rptr. 831 n. 3, 433 P.2d 919, 922 (1967);

Hickock v. Hand, 190 Kan. 224, 373 P.2d 206, 214 (1962), cert. denied, Hickock v. Crouse, 372 U.S. 924, 83 S.Ct. 741, 9 L.Ed.2d 728 (1963); Goodwin v. Page, 444 P.2d 833, 838 (Okl.Cr.1968).

5. Brown v. Allen, 344 U.S. 433, 458, 73 S.Ct. 397, 97 L.Ed. 469, 489 n. 6 (1953); Cruz v. United States, 368 F.2d 783 (4th Cir. 1966).

able cause. When appellant argues that "the record does not show," he appears to argue himself out of court.

■ Although the superior court in its June 27, 1968, decision specifically found that certain errors and omissions in the original appeal transcript would not have affected the prior decision of this court rendered upon appeal from the conviction[6], we deem it appropriate for this court to specifically affirm the superior court's finding on this point. On the prior appeal the transcript of the first preliminary hearing was not included. Although a transcript of the second preliminary was included, it omitted the final arguments of counsel and the decision of the district court that it was without power to change the prior decision of the district court on the issue of probable cause. Had these omitted portions of the transcript been included on the original appeal, our decision would have remained the same. Appellant has also pointed to one error in the transcript of the second preliminary hearing. It is set forth in the appendix. The difference in wording between the original transcript and the corrected transcript relates to why the picture of appellant was shown to an accomplice for identification prior to arrest. The difference does not relate to when the picture was shown to the accomplice or to the undisputed fact that it was shown to the accomplice. We conclude the difference in the two transcripts is immaterial.

## II.

With regard to appellant's appeal in case No. 1037, as stated above, the Amended Petition for Habeas Corpus will be treated by this court as a successive application for post-conviction relief pursuant to Criminal Rule 35(b). According to this rule successive motions alleging new grounds for relief may normally be made at any time.[7] The new ground for relief asserted in the petition filed after the hearings is appellant's claim of unlawful discrimination in the selection of the jury at his trial. This claim has never been raised at any of the earlier proceedings.

■ At the conclusion of the hearings which were held in case No. 688, Judge Fitzgerald forwarded all the records and files in the case to this court. The state has argued that the summary rejection of the successive petition can be upheld because Judge Fitzgerald had forwarded the records of the case to this court and thereby deprived himself of jurisdiction over the case. The state offers no authority or further explanation for this contention. Since successive motions to the sentencing court can always be made, we do not believe it is possible for the superior court to divest itself of jurisdiction over a prisoner's application for post-conviction relief.

As the state's second point, it cites the case of United States v. Oates, 61 F.2d 536 (9th Cir. 1932) for the proposition that errors in the manner of selecting the jury do not affect jurisdiction and, therefore, cannot be raised by habeas corpus. The *Oates* case arose out of a decision of the District Court for the Territory of Alaska, Fourth Judicial Division. Upon close examination the case is not in point. In *Oates* the alleged error for which habeas corpus was denied, was the impaneling of a jury according to section 2528 of the Compiled Laws of Alaska instead of in accordance with a later law. There was no attack on either statute as unconstitutional. It was not a case of systematic exclusion of a race or class from a jury. Certainly, there is ample authority indicating that exclusion of a race or class from a jury is a proper subject for post-conviction relief.[8]

---

6. Merrill v. State, 423 P.2d 686 (Alaska 1967).

7. Sanders v. United States, 373 U.S. 1, 13–14, 83 S.Ct. 1068, 10 L.Ed.2d 148, 160 (1963).

8. Eubanks v. Louisiana, 356 U.S. 584, 589, 78 S.Ct. 970, 2 L.Ed.2d 991, 995 (1958); Wade v. Yeager, 377 F.2d 841, 845–846 (3d Cir. 1967); McNeil v. State, 368 F.2d 313, 315 (4th Cir. 1966).

Thus the reasoning of the *Oates* case that errors in the selection of a jury is not jurisdictional is either not on point, i. e., applies to minor irregularities not constitutional questions,[9] or it is simply wrong.

Although *Oates* is not on point, the difficult question remains whether a hearing should have been held to determine the merits of appellant's claim of jury discrimination. Appellant had a full trial, an appeal from that trial, a lengthy post-conviction hearing, and an appeal from that hearing. At all times he was represented by able counsel appointed by the court. At no time was the question of jury selection procedures raised. The United States Supreme Court has stated that "No matter how many prior applications for federal collateral relief a prisoner has made," a different ground presented in a new application can always be made.[10] However, all courts have recognized that there is a separate interest in finality. At some point in time after a criminal conviction, the focus of attention should shift from a re-examination of the correctness of the trial to the rehabilitation and eventual release of the prisoner.

> The procedural arrangements we create for the adjudication of criminal guilt have an *important* bearing on the effectiveness of the substantive commands of the criminal law. I suggest that finality may be a crucial element of this effectiveness * * *. A procedural system which permits an endless repetition of inquiry into facts and law in a vain search for ultimate certitude implies a lack of confidence about the possibilities of justice that cannot but war with the effectiveness of the underlying substantive commands. Furthermore, we should at least tentatively inquire whether an endless reopening of convictions, with its continuing underlying implication that perhaps the defendant can escape from corrective sanctions after all, can be consistent with the aim of rehabilitating offenders. The first step in achieving that aim may be a realization by the convict that he is justly subject to sanction, that he stands in need of rehabilitation; * * *

Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441, 451–52 (1963) (footnotes omitted).

Various courts and legislative bodies have adopted rules which manifest this interest in finality and which also protect the courts from abuses of procedure. The United States Supreme Court in Sanders v. United States, *Id.* at 18, 83 S.Ct. at 1078, 10 L.Ed. 2d at 163, has stated, "Nothing in the traditions of habeas corpus requires the federal courts to tolerate needless piece-meal litigation, or to entertain collateral proceedings whose only purpose is to vex, harass, or delay." The court had stated earlier that a hearing is required in the federal courts "if for any reason not attributable to the inexcusable neglect of petitioner, * * * evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing * * *." Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 759, 9 L.Ed.2d 770, 788 (1963). It is the federal rule that a prisoner who deliberately withholds one of two grounds for collateral relief at the time of filing his first application, may be deemed to have waived his right to a hearing on a second application presenting the withheld ground. If the government in response to an application shows a deliberate bypassing of procedure or

---

9. Stirone v. United States, 341 F.2d 253 (3d Cir.), cert. denied, 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284 (1965), held claims of errors in the selection of the jury, such as the absence of the trial judge during peremptory challenges and the fact that voir dire was conducted by the deputy clerk and was not recorded, did not rise to constitutional proportions and did not require a vacating of the sentence where the defendant had had the opportunity to raise the issues earlier but had failed to do so.

10. Sanders v. United States, 373 U.S. 1, 17, 83 S.Ct. 1068, 1078, 10 L.Ed.2d 148, 162 (1963).

actual, knowing waiver or abandonment of a claim of error,[11] or inexcusable neglect in failing to raise an error at an earlier proceeding, the sentencing court, in the federal system, will be entitled to exercise its discretion and decline to hear the merits of a successive application alleging a new ground of error.

The federal standard just stated represents an expansion of the scope of the power of the federal courts to review post-conviction proceedings in state criminal matters.[12] Finality and orderly procedure have been partially subordinated to the courts' interest in error-free criminal procedure. The federal courts are now much more available for the consideration of post-conviction complaints involving federal constitutional issues where an adequate state hearing has not been granted. This new federal attitude has not gone unnoted by state courts and legislatures.[13] In order to retain control over those who violate state laws, some states have by law increased the scope of their own habeas corpus power. Since the federal courts are still limited by the principle of exhaustion of state remedies, if a state allows a broad scope to its post-conviction remedies, there will be fewer cases where federal relief will be appropriate.

The California Supreme Court has recently stated,

Habeas corpus is available to challenge violations of constitutional rights relevant to the determination of guilt if the petitioner presents an adequate excuse for failing to invoke his remedy by appeal. [cites omitted] Although we are not bound by federal standards in determining what constitutes an adequate excuse for failing to invoke the remedy by appeal, we have recognized the relevance of the federal habeas corpus test that permits denial of relief 'to an applicant who has deliberately bypassed the orderly procedure of the state courts.'

In re Cameron, 68 Cal.2d 487, 67 Cal.Rptr. 529, 531, 439 P.2d 633, 635 (1968). Based perhaps on the phrase "inexcusable neglect" used by the Supreme Court in Townsend v. Sain, state courts are using the rule that if an adequate excuse is presented by the applicant for failing to raise the new claim of error at an earlier proceeding, then the collateral attack will be permitted. This standard is far broader in scope than the traditional state standard.[14]

A recent form of reaction to the new federal attitude is the Revised Uniform Post-Conviction Procedure Act. Approved in August of 1966, this uniform act became the basis for Alaska's change in Criminal Rule 35, which became effective in September 1968. Section 8 of the uniform act (section (i) of Alaska Criminal Rule 35) provides as follows:

All grounds for relief available to an applicant under this rule must be raised in his original, supplemental or amended

11. Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837, 869 (1963) ; compare Kinnell v. Crouse, 384 F.2d 811 (10th Cir. 1967) with McNeil v. State, 368 F.2d 313 (4th Cir. 1966).

12. *See* 33 F.R.D. 363 (1964) for a thorough discussion of the federal habeas corpus power. Judge Becker's article is particularly helpful, 33 F.R.D. at 452.

13. *E. g.*, State ex rel. Barksdale v. Dees, 252 La. 434, 211 So.2d 318 (1968).

14. Traditionally a claim of error that could have been raised at trial or on appeal could not be raised by habeas corpus. [H]abeas corpus is not and cannot properly be used in the place of a regular appellate review. As to any claim-

ed error or irregularity which was known or should have been known to the appellant at the time of judgment, there was first an obligation to call it to the trial court's attention and seek remedy ; and that failing, there was next a duty to seek review and correction on appeal. If that is not done within the time allowed by law, the judgment becomes final and not subject to further attack for any matters which could have been so reviewed on regular appeal.

Velasquez v. Pratt, 21 Utah 2d 229, 443 P.2d 1020, 1022 (1968). With regard to jury selection see Sims v. Balkcom, 220 Ga. 7, 136 S.E.2d 766 (1964) ; State ex rel. Callahan v. Henderson, 220 Tenn. 417, 417 S.W.2d 789 (1967).

application. Any ground finally adjudicated *or not so raised*, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief may not be the basis for a subsequent application, *unless the court finds a ground for relief asserted which for sufficient reason was not asserted* or was inadequately raised in the original, supplemental, or amended application. (Emphasis added.)

According to this section, any ground not raised at any earlier proceeding cannot be raised in a subsequent application unless the court finds there was a sufficient reason for not asserting it in the first proceeding.

A great many applications for post-conviction relief are made without the assistance of counsel. When faced with an application for relief which contains a ground of error which could have been asserted at an earlier stage, the courts of this state stand ready to make a diligent search through the records and files of the case in order to discover if a sufficient reason exists for the failure of the applicant to raise the claim of error at an earlier stage of the proceedings. Although the present case arises under the old Criminal Rule 35(b), we see no reason not to apply the principles of the new Criminal Rule 35 as interpretive of the old rule on this point. This court has not had the occasion to interpret the old Criminal Rule 35 on the question of successive applications for relief.

█ Although there is no need for us to catalog sufficient and insufficient excuses,[15] it is appropriate to mention one

excuse which is insufficient: The simple failure of counsel to raise a claim of error. This excuse cannot be asserted as a sufficient reason for failure to timely raise a claim of error. On the other hand, if the applicant had no counsel at the time when the issue could have been raised, then we will assume that the applicant was unaware of the error and/or its legal significance.[16] It will then be open to the State to show actual, knowing waiver or abandonment by the applicant or deliberate abuse of procedure. However, if the applicant was represented by counsel at the time the issue could have been raised, then we will not indulge in presumptions in favor of the applicant; and the applicant will have the burden of showing sufficient excuse for the failure to raise the issue at the proper time.

The operation of the above rules can be illustrated by the following example. A petitioner normally begins the post-conviction review process by writing a letter or other communication to a court of this state requesting some form of relief. These letters are referred to the superior court which then sends the petitioner a standard form application for post-conviction relief to be filled out by the petitioner and returned to the superior court. The clerk of the court dockets the application and delivers a copy to the district attorney who responds by answer or motion. The superior court will then make its initial decision on these pleadings, the record, and whatever affidavits have been submitted. If the superior court decides that no "material issue of fact exists" and that the applicant is not entitled to post-conviction relief, "it may indicate to the parties its intention to dismiss the application and its reasons for so doing."[17]

---

15. One excuse for failure to appeal which has been held to be sufficient is the fear that upon a new trial the death penalty would be imposed instead of life imprisonment. In re Cameron, 68 Cal.2d 487, 67 Cal.Rptr. 529, 439 P.2d 633, 635 (1968).

16. The recent case of Widermyre v. State, 452 P.2d 885 (Alaska 1969), which did

not discuss the significance of the fact that the applicant was proceeding upon his second application, can be reaffirmed on its facts since the applicant was without counsel when he failed to appeal the summary denial of his first application for post-conviction relief.

17. Crim.R. 35(g) (2).

The applicant is then given an opportunity to reply to the proposed dismissal. In light of the reply, or on default thereof, the court may order the application dismissed. If the court determines that the application requires a hearing, then counsel will be provided for indigent applicants.[18] At this point counsel should review with the petitioner all possible claims of errors or injustice and move to amend the original application to include any further claims. The court may order the applicant brought before it for the hearing; however, the court can also receive proof by affidavits and depositions.[19] An appeal may be taken from the order issued at the conclusion of the hearing or from the order dismissing the application without a hearing. As long as a petitioner has not had the benefit of counsel on a prior application, i. e., it was dismissed without a hearing on the merits, he may continue to apply for relief without presenting any further excuse for failing to include the successive claim in his prior application. However, if a petitioner has had a hearing on a prior application with the benefit of counsel, then any successive applications must show an excuse for failing to include the successive claim in the prior application.

Applying these rules to the present case, we find no excuse in the records and files of this case for the failure to raise at an earlier time the issue of jury discrimination. Applicant was represented by counsel throughout all of the trial and post-conviction proceedings. The hearings on post-conviction relief extended over several months. Certainly the manner in which juries are selected in Anchorage is generally known to the public and members of the bar.[20] Therefore, unless the applicant can show a sufficient reason for not asserting his claim of discrimination at an earlier time we will not entertain such a claim on its merits. Because the present application presented no excuse, the summary denial of the application was proper.

The judgments below are affirmed.

## APPENDIX

Q  Why in particular did you * * * want a picture of Merrill to show him?

A  * * * [H]e'd given us the name, which included a nickname, Skimo—, our knowledge was that we did have a suspect fitting the description with the nickname, Skimo, which was Mr. Merrill.

Q  You're sure the nickname he gave you wasn't Mike?

* * * * * *

Original Transcript at 74

A  Yes, I am. I recall this deduction (indiscernible) one reason we asked for the picture of Mr. Merrill.

Corrected Transcript at 131–32

A  Yes, I am. I recall this pretty definitely, this particular reason we asked for the picture of Mr. Merrill.

RABINOWITZ, Justice (concurring in part, dissenting in part).

I have no difficulty with this court's affirmance of the superior court's denial of appellant's initial application for post-conviction relief. More specifically, I am in accord with the majority's conclusions that the superior court's resolution of the probable cause issue was correct. I also believe that the superior court's evaluation of the impact of certain inaccuracies which were discovered in the original record on appeal did not affect any substantive aspect

---

18. Crim.R. 35(f).

19. Crim.R. 35(h).

20. It should be noted that appellant claims that the method used for selecting juries in Anchorage, based on statutes and partially on custom, though not designed to discriminate, does in fact result in discrimination because citizens who do not have telephones, or who live more than 15 miles from Anchorage, or who failed to vote in the preceding general election, or who do not return the court's questionnaire or who claim an exemption, are excluded from jury service.

of our decision in Merrill v. State, 423 P.2d 686 (Alaska 1967).

The focus of my disagreement concerns the court's disposition of appellant's amended application for post-conviction relief. The majority has characterized this application "as a [second] successive application for post-conviction relief pursuant to Criminal Rule 35(b)."[1] In this pleading, appellant sought relief from his conviction on the ground of "systematic, unlawful exclusion of certain classes of persons from the jury at appellant's trial." This precise ground had not been previously advanced by appellant either at trial or in any post-conviction proceeding held pursuant to Criminal Rule 35(b). The superior court disposed of the amended application without an evidentiary hearing.[2] The lower court's order of July 29, 1968, rejecting the amended application is somewhat enigmatic, but contains a hint that the court might have believed that it had no jurisdiction to entertain this second successive application for post-conviction relief.[3]

The prime motivation for dissenting from the decision of my colleagues is the belief that it is basically unfair to review the merits of appellant's amended, or successive application for post-conviction relief, under criteria which did not become effective until some two months after the superior court had denied appellant's amended application for post-conviction relief. For

Criminal Rule 35(i), which provides the matrix for the majority's decision, did not become effective until September 16, 1968.[4]

Antecedent to this court's promulgation of a new rule for post-conviction procedures, our Criminal Rule 35(b), in its essential provisions, was identical to the provisions of 28 U.S.C., section 2255. This statute established certain procedures and standards for the obtention of post-conviction relief in the trial courts of the federal judicial system. Both Alaska's former Criminal Rule 35(b), and its federal prototype, provided that the "sentencing court * * * shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner." In 1963, the Supreme Court of the United States, in its seminal decision in Sanders v. United States, 373 U.S. 1, 12–15, 83 S.Ct. 1068, 10 L.Ed.2d 148, 159–161 (1963), held that the doctrine of res judicata was not applicable to motions for post-conviction relief under section 2255. There the court construed the phraseology "similar relief" as meaning relief sought on a similar ground as distinguished from reseeking post-conviction relief in general. More to the point, the Supreme Court in *Sanders* formulated three conditions which must be satisfied before the sentencing court could properly accord controlling weight to a denial of a prior application for relief under section

1. At the time appellant filed this amended application in superior court, Criminal Rule 35(b) read in part:
   The sentencing court, or its successor, shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner.

2. Crim.R. 35(b) at that time provided in part as follows:
   Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the State District Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

3. This misapprehension possibly resulted because of the language we employed in originally remanding the case. In this court's order of July 10, 1967, the case was remanded to the superior court pursuant to Crim.R. 35(b) and "the requirements laid down by this Court in Thompson v. State, 412 P.2d 628, 636–637 (Alaska 1966)." In *Thompson*, we specifically retained jurisdiction of the case.

4. *See* Supreme Ct. Order 98 pursuant to which the present Crim.R. 35 governing post-conviction procedures was promulgated. As previously indicated, appellant's amended application was denied by the superior court on July 29, 1968.

2255. These criteria are contained in the following passage from *Sanders*:

> Controlling weight may be given to denial of a prior application for federal habeas corpus or § 2255 relief only if (1) the same ground presented in the subsequent application was determined adversely to the applicant on the prior application, (2) the prior determination was on the merits, and (3) the ends of justice would not be served by reaching the merits of the subsequent application.[5]

Concerning the problem of successive applications which are claimed to be an abuse of discretion, in *Sanders* the Court said:

> No matter how many prior applications for federal collateral relief a prisoner has made, the principle elaborated in Subpart A, supra, cannot apply if a different ground is presented by the new application. So too, it cannot apply if the same ground was earlier presented but not adjudicated on the merits. In either case, full consideration of the merits of the new application can be avoided only if there has been an abuse of the writ or motion remedy; and this the Government has the burden of pleading.[6]

In *Sanders*, the Court remarked that abuse of remedy is shown if it is established that the movant had deliberately withheld a possible ground for collateral relief in the hope of being granted two hearings rather than one, or if the movant deliberately abandoned one of his grounds at the first hearing. Also of significance is the fact that *Sanders* made applicable criteria developed in Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), and Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), for the determination of abuse of remedy concerning section 2255 motions.[7]

When measured against what I consider the controlling standards in force at the time appellant's amended application for relief was filed, and at the time it was denied by the sentencing court, I cannot conclude that the sentencing court's denial of the amended application for post-conviction relief warrants affirmance. In short, under *Sanders* controlling weight could not be accorded to the fact that this was a successive application for post-conviction relief. None of the three criteria of *Sanders* were met here, nor was any abuse of remedy shown. The amended application raised a new ground. In my view it could not be determined conclusively from an examination of the files and records that appellant was entitled to no relief. See Knaub v. State, 443 P.2d 44, 50 (Alaska 1968). I am therefore of the view that this facet of the appeal should be remanded for further proceedings.

Nothing in this court's own prior decisions under former Criminal Rule 35 (b) would have alerted either appellant, or his counsel, that judicial interpretations of section 2255 would not be given controlling weight in the resolution of issues under our then parallel provisions of Criminal Rule 35(b). In our recent opinion in Pore v. State,[8] we cited *Sanders* in support of the following statement: "Our holding today does not preclude appellant from making a second application for post conviction relief." Even more recently in Widermyre v. State[9] we reversed the sentencing court's rejection of a second successive application for post-conviction re-

---

5. Sanders v. United States, 373 U.S. 1, 15, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148, 161 (1963) (footnote omitted). In its opinion, the Supreme Court also indicated that even if these three are not met, a successive motion could be denied without a hearing if the application, files and records of the case show conclusively that it is without merit.

6. *Id.* 83 S.Ct. at 1078, 10 L.Ed.2d 162.

7. In *Fay*, the Supreme Court employed the "deliberate by-passing" criterion for determining abuse of post-conviction remedies, as well as the "inexcusable neglect" or "inexcusable default" criterion.

8. 452 P.2d 433 (Alaska 1969).

9. 452 P.2d 885 (Alaska 1969).

lief. Adherence to *Sanders'* holdings concerning res judicata and the weight to be accorded the fact that appellant had made a prior application for post-conviction relief were implicit in these decisions.

Disregarding the foregoing, the majority now holds both appellant and his counsel to a standard which required that all grounds for relief be raised in appellant's original application unless sufficient reason be shown for not asserting the ground in the original proceeding. I reiterate not only was this rule not in effect when appellant and his counsel filed the amended application, it still had yet to be promulgated at the time the sentencing court denied the amended application. This situation is further compounded by virtue of the majority's affirmance of the sentencing court's denial of any relief under the amended application without affording appellant the opportunity of establishing, either at the appellate level or upon remand, "sufficient reason" for not asserting the composition-of-the-jury-panel ground in his original application.

Concerning the provisions of our present Criminal Rule 35(i), I would have preferred that the court deferred placing any judicial gloss upon its text until the matter had been presented in an adversary setting. I do wish to voice my approval though of the apparent liberal interpretation of Criminal Rule 35(i) which will be employed in situations where the applicant was not represented by counsel at the time of making his initial application or at the time the issue "could have been raised." For I think it would be an unfortunate retreat if we were to require technical proficiency from lay pleaders attempting to obtain post-conviction relief. Many problems ranging in scope from administrative to those of constitutional dimensions concerning the meaning of the language employed in Criminal Rule 35(i) must await judicial decision. Assuming the applicability of our present Criminal Rule 35(i) as the governing standard for review of the trial court's ruling on appellant's amended application, I consider it sufficient at this time to adhere to the presumption of sufficient reason which the majority has today approved for applicants for post-conviction relief who do not have the benefit of assistance of counsel.