Alan Eugene **REED,** Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 21724.

United States Court of Appeals
Ninth Circuit.

March 6, 1968.

Ala Eugene Reed, in pro. per.

Edward E. Davis, U. S. Atty., Lawrence Turoff, Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before HAMLEY and DUNIWAY, Circuit Judges, and ZIRPOLI*, District Judge.

DUNIWAY, Circuit Judge:

This is the second appeal in this case. See Reed v. United States, 9 Cir., 1966, 364 F.2d 630. We there affirmed Reed's conviction of kidnapping in violation of 18 U.S.C. § 1201. Our mandate was filed in the District Court on September 26, 1966. On the same day there was "lodged" with the District Court a Motion by Reed to Vacate under 28 U.S.C. § 2255, accompanied by an affidavit and motion for leave to proceed in forma pauperis, which was also marked "lodged." [1] There was also an affidavit showing service by mail on the United States Attorney on August 18, 1966. Nothing more appears to have happened until October 20, 1966, when another such motion, this time on a mimeographed form, was apparently received by the Clerk.[2] This document is verified, and is also accompanied by a "forma pauperis affidavit."

On December 6, 1966, the court made an order reading:

"Petitioner in federal custody petitions in forma pauperis for vacation of his sentence now being served, pursuant to 28 USC 2255.

The petition may be filed and is hereby denied."

The docket shows the filing, on that date, of a petition to vacate sentence,

---

* Honorable Alfonso J. Zirpoli, United States District Judge, Northern District of California, sitting by designation.

1. Whether the documents were marked "lodged" because the motion was unverified, or because the motion was not on the form prescribed by the court, or because it was to be held pending action on the request for leave to proceed in forma pauperis, is not clear. We can find no local rule of court on the subject.

2. There is no docket entry about receipt of the document. It does, however, bear an Oct. 20, 1966 date stamp. It also bears a penciled notation "Copy del. t. U.S. Atty 10-21-66."

"with copy of Govt's Memorandum and Motion in Opposition attached," and of the Court's order. The mimeographed form is stamped as filed December 6, 1966. No such stamp appears on the papers that were marked "lodged" on September 26, 1966. For some reason, not disclosed, the original of the government's opposition was not served on Reed or filed in the action until May 8, 1967. The reporter's transcript of Reed's trial is also before us. There is nothing in the record to show whether the court referred to it before acting upon Reed's petition, or whether the court considered the motion lodged on September 26.

The only factual allegation appearing in the mimeographed motion is as follows:

"9. State concisely the grounds on which you base your allegation that the sentence which was imposed on you is invalid:

(a) That I was mentally incompetent before, during and after the trial.

\* \* \* \* \* \*

10. State concisely and in the same order the facts which support each of the grounds set out in (9):

(a) I hope to support these grounds with witnesses, prison and hospital records and medical testimony."

The "lodged" motion is more detailed:

"The petitioner was mentally incompetent to stand trial or to undergo punishment thereof, due to several injuries inflicted upon his person before trial. Petitioner was struck on the head with a bottle and received a severe wound when he was seven or eight years of age, which caused him to have severe head aches throughout his life.

In July or August 1964 petitioner received another head injury while in the State prison at San Quentin, California during a racial disturbance. These are a matter of record and can be proven by witnesses.

The last injury caused the petitioner to have blackouts which sometimes lasted for weeks. He was on an honor camp and would have soon been released when he escaped, according to his partner and codefendant, Ivan D. Weighbors.

Petitioner remembers very little since the time of this injury. Upon his capture in Oklahoma by the Oklahoma State Police he was beaten by said police and was struck in the kidney with a shot gun.

Petitioner was later turned over to the Federal authorities and was taken to the Federal detention center, Florence, Arizona. Petitioner was again beaten with a pistol by Marshal Morset from the Phoenix office and was later taken to the hospital at Florence where he remained for three days under sedation by morphine and other drugs. During this period petitioner was fed intraveniously [sic] and had x-rays taken by a lady x-ray technician.

Petitioner did not know until he had been in Leavenworth for some time that he had been convicted of a crime and was given a long sentence. He does not remember a trial or anything about it.

The petitioner has submitted to this court the various acts and events that partially cover his periods of mental lapses, that paranoia and schizophrenic insanity have been diagnosed in petitioner's case."

Section 2255, under which Reed's motions were presented to the court, provides, in part:

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

We suppose that the court relied upon this language in denying the motion. It was entitled to consider, among other things, its own memory of what happened at the trial, including its own impression of Reed's competence to stand trial gained

from observing him and his behavior. It could refresh that recollection by reference to the transcript of his trial. Perhaps it did so.[3]

The question that Reed sought to raise is whether, when tried, he was "insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense * * *." (18 U.S.C. § 4244) The trial record is strong evidence that he was then neither insane nor mentally incompetent: Neither the United States attorney nor Reed's able trial counsel nor the court ever suggested the possibility of insanity or lack of mental capacity; Reed took the stand in support of a motion to suppress and testified clearly, rationally, and in circumstantial detail about his arrest; his counsel's cross-examination of government witnesses indicates that Reed provided intelligent assistance. We can readily understand how a trial judge could feel that such a record "conclusively show[s]" that Reed "is entitled to no relief" (28 U.S.C. § 2255), i. e., that he was able "to understand the proceedings against him" and "properly to assist in his own defense." (18 U.S.C. § 4244.)

Nevertheless, we feel constrained to reverse. The Criminal Code itself contemplates the possibility that the type of incapacity defined in section 4244 may exist without being apparent to those participating in the trial. (18 U.S.C. § 4245.) Further, in a somewhat comparable case, the Supreme Court summarily reversed for a hearing. Bishop v. United States, 1956, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835, reversing Bishop v. United States, 1955, 96 U.S. App.D.C. 117, 223 F.2d 582. We have consistently, if not always happily, followed this decision and have done so in some cases where the factual showing was

no stronger than here. See Stone v. United States, 9 Cir., 1966, 358 F.2d 503; Norman v. United States, 9 Cir., 1960, 276 F.2d 377; Bell v. United States, 9 Cir., 1959, 269 F.2d 419; Smith v. United States, 9 Cir., 1959, 267 F.2d 210; Smith v. United States, 9 Cir., 1958, 259 F.2d 125.

Reversed and remanded for further proceedings.

---

**3.** The court may have considered only the petition marked filed on December 6 and denied it for failure to allege facts. But it also had in the file the "lodged" petition which did state facts that might support a finding of incompetency to stand trial. In this opinion we assume that the court did consider the allegations of that petition. At the least, it showed that Reed could amend to allege facts dehors the record of his trial. The government "Motion in Opposition" invited the court's attention to the statements in the "lodged" petition, to the court's recollection of Reed's behavior at trial, and to the trial transcript of Reed's testimony.