James Calvin **WIDERMYRE**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 969.

Supreme Court of Alaska.

March 7, 1969.

Clifford J. Groh, Anchorage, for appellant.

Douglas B. Baily, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal primarily concerns the superior court's denial of appellant's second motion for post conviction relief under Criminal Rule 35(b).[1] In part, Criminal Rule 35(b) provided that:

> Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the State District Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

In the case at bar the superior court denied appellant's applications for post conviction relief without holding any evidentiary hearings.

On January 11, 1966, an indictment was returned against appellant charging him with the felony offense of passing a forged check. Less than a month later, the An-

---

1. At the times in question Crim.R. 35(b) was substantially similar to the federal 28 U.S.C. § 2255. Alaska's Crim.R. 35
   (b) was significantly changed through amendments which became effective September 16, 1968.

chorage district attorney's office filed an information charging appellant with violation of Alaska's habitual criminal act.[2] The next event of significance occurred when appellant's counsel, Warren A. Tucker, filed an affidavit in support of a motion for psychiatric examination. In this affidavit of April 28, 1966, Mr. Tucker stated in part that

> he has encountered certain difficulty in obtaining responsive and coherent answers from the defendant; that he has observed a distracted and inattentive attention in the defendant which makes him doubt that he has a clear understanding of the gravity of the charges against him and that he is informed and verily believes that he is suffering from epilepsy and is currently taking medication known as dilatin and phenobarbital for that mental disease * * *.[3]

The state and appellant's counsel then stipulated for a psychiatric examination to determine whether appellant was legally sane at the time of the commission of the offense, and to further determine whether or not he was competent to assist in his own defense. A psychiatric examination was ordered, completed, and a hearing held on the issue of appellant's competency. At this May 10, 1966, hearing, Dr. Charles Ward, a psychiatrist attached to the staff of the Alaska Psychiatric Institute, testified that in his opinion appellant was competent to assist in his own defense.[4] During the course of his examination, the doctor was asked whether appellant was presently taking narcotics of any kind. The witness responded:

> I don't think he is, no sir, and I don't think he's taken them. I couldn't swear to that but I don't think he is. I don't think he's taken any since he's been out of prison.

The competency hearing was then continued until May 18, 1966, in order to permit the completion of additional psychological and physical examinations of appellant by the Alaska Psychiatric Institute. At the conclusion of this hearing, Superior Court Judge Ralph E. Moody found appellant "mentally competent to understand the proceedings against him and to properly assist in his own defense."[5] The next morning appellant appeared in superior court before Judge Edward V. Davis. At this time appellant was represented by both of his court-appointed counsel, Messrs. Tucker and Occhipinti, who informed the court that appellant desired to withdraw his plea of not guilty to the forgery indictment and to enter a plea of guilty. Judge Davis then examined appellant for the purpose of ascertaining whether the plea was made voluntarily with the understanding of the nature of the charge. After the guilty plea had been accepted, the prosecutor asked the court for permission to have appellant sworn. This request was granted and the state's attorney then proceeded to

2. In the information it was alleged that appellant had previously been convicted of seven felonies.

3. C. J. Occhipinti, appellant's attorney in regard to the then separate pending felony charges, concurred in Mr. Tucker's affidavit.

4. At one point in Dr. Ward's testimony the following occurred:
   Q [W]hat is the effect of one and one quarter grains of dilatin—dilantin?
   A Praxtin—are you talking about on the mental functionings of a person?
   Q Alertness, primarily?
   A So far as I know, none.

5. Prior to the entry of his formal order, Judge Moody stated:

> Well, I think, it's clear from the Doctor's testimony here that Mr. Widermyre may have some personality problems and may be antisocial; but at this stage of the law, so far, there has been no ruling by any of the Courts that says that just because he's been unable to get in—along with society * * * that's any basis for not going to trial, and the doctor has been quite conclusive I think in his testimony, that he does understand the nature of the charges against him and is able to assist in his own defense. In fact, he stated that * * * because of this problem he has, he'd probably be sharper than most defendants in helping his counsel to assist—to participate * * * in his defense.

examine appellant as to the circumstances of the forgery charge, as well as the basis for appellant's withdrawal of his plea of not guilty. At the conclusion of the change of plea proceedings, the other felony indictments which were pending against appellant were dismissed. Also dismissed was the information in which appellant was charged with violation of Alaska's habitual criminal statute. A presentence investigation and report was ordered and, pending imposition of sentence, appellant was released on his own recognizance. Prior to the termination of this change of plea proceeding, Judge Davis advised that he would not be able to sentence appellant and obtained the consent of appellant and both his court-appointed counsel to permit Judge Moody to sentence appellant.

One month later, on July 19, 1966, appellant appeared before Judge Moody for sentencing and when asked if he had anything to say, stated:

Well, Your Honor, don't know very much I could say. Just have to ask the Court's mercy.

Appellant was then sentenced to 10-years' imprisonment and was, upon his request, released on his own recognizance for a few days in order to visit with a relative who had come to Anchorage.

Thirteen months later, on September 19, 1967, appellant filed a document prepared without the assistance of counsel. This document was captioned in part "Petition to Withdraw Plea of Guilty for Manifest Injustice Pursuant to Rule 32(d) of the Rules of Criminal Procedure for the State of Alaska."[6] The purported factual basis of appellant's pro se petition was that he "was mentally incapacitated at the time he tendered his plea of guilty due to his ingestion of an hallucination type drug known as LSD some twelve hours before such plea was tendered." The petition was supported by appellant's affidavit where he stated in part:

That prior to, and at the time, affiant tendered his plea of guilty in the aforementioned case, he was heavily addicted to the use of barbiturate type drugs;

That the evening prior to affiant tendering his plea of guilty in the aforementioned case, he did take two capsules of a drug known as LSD;

That affiant did ingest this drug (LSD) in the hope of relieving his emotional problems and tension which had led to increasing his consumption of barbiturate type drugs;

That affiant's addiction to the aforementioned type barbiturate drugs, together with his ingestion of two capsules of LSD, impaired his mental capacities to the degree that he did not plead with understanding;

That affiant's recollection of the period of time he tendered his plea of guilty, is like recalling something as in a dream, rather than a recollection.[7]

In its memorandum in opposition to appellant's petition, the state took the position that the inadequacies of appellant's showing prevented the granting of any relief.[8] Thereafter, on September 28, 1967,

---

6. Crim.R. 32(d) provides:
   A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended; but to correct manifest injustice, the court, after sentence, may set aside the judgment of conviction and permit the defendant to withdraw his plea.

7. Appellant also asserted in this same affidavit that he was
   not guilty of the offense to which he tendered his plea of guilty;

   That affiant was not aware of the judicial remedy (withdraw plea of guilty) until some two months ago;
   That had not affiant been mentally incapacitated when tendering his plea of guilty, he would have entered a plea of 'Not Guilty.'

8. In part, the state contended that:
   Defendant's motion fails, however, to set forth any information in support of such allegation. There is no indication of the amount of the drug ingested except that defendant 'did take

in open court Judge Davis, without holding an evidentiary hearing, rendered an oral decision.[9] In conformity with his oral decision, Judge Davis subsequently entered an order denying appellant's motion to vacate sentence.[10] In this order the superior court concluded that Criminal Rule 32(d) was inappropriate and considered appellant's application for post conviction relief as made pursuant to Criminal Rule 35(b). In denying appellant's application, the superior court specifically found "that Mr. Widermyre at the time of making his plea was not under the influence of LSD or of any other drug."

No appeal was taken from the superior court's order of October 1, 1967.[11] Four months after Judge Davis denied appellant's first application for post conviction relief, appellant filed, on February 2, 1967, a "Motion to Vacate Sentence and Judgment." In this motion appellant asserted that Judge Davis' denial of his petition was a nullity because "petitioner's allegations, in the prior motion, related to facts outside of the record, and petitioner was not afforded an opportunity to prove or substantiate his allegations with evidence." In this second motion to vacate, appellant reasserted his purported mental incompetency at the time he entered his guilty plea; that he was not guilty of the crime charged; and additionally asserted he was denied due process of law because he was deprived of the right to present evidence which would have proved the truth of his allegations. In his affidavit in support of his Criminal Rule 35(b) motion to vacate the judgment, appellant stated:

2. That prior to and at the time I entered my plea of guilty, I had been taking large amounts of what are commonly called 'dangerous drugs';

3. That I had been taking these drugs along with the 'dangerous drugs' which

two capsules.' Neither the size of the capsules, nor the precise dosage is given, with the result that even if there was some evidence of the effect of such drugs, it would be impossible to determine what the effect would have been in this case.

In the cases cited by defendant there was some showing as to the type of drugs involved and evidence that defendant had in fact been influenced by such drugs. Here, there is the bare assertion by defendant that he took two capsules some 12 hours before entry of his plea, with nothing in support of his claim that such drug, taken in such manner, could and did cause him to enter his plea without understanding the consequences.

9. The transcript of this in-court proceeding discloses that the state was represented by Edmond Burke, assistant district attorney, and that "Mr. Tucker is here as being the attorney who represented Mr. Widermyre at the time he pleaded in this charge."

10. Prior to the entry of this formal order on October 4, 1967, Judge Davis received a letter from appellant in which he stated in part:

In my affidavit I stated two reasons; the first; is I was addicted to barbiturate. The second; I am not guilty * * *.

I will explain the first reason. I been taking pheno-barbital continually for more than two years. I take this three times a day every day. The times I miss can be counted at the hospital. They are prescribed. I buy the medicine from Rexall Drug in Mountain View, Alaska. My Dr. was Doctor O'Malley. I also used the Rx cough medicine, a codine mix. I drank whiskeys, wine, and all drinks of that sort. I took pills to stay awake, and escape. L.S.D. was taken for the same purpose. This is not easy, or nice to say. I am far from being pleased with my past.

11. The record furnished to this court does disclose that on October 20, 1967, the clerk of the superior court in Anchorage received a letter from appellant in which he acknowledged receipt of a copy of the court's order denying his motion to vacate sentence. In part, appellant wrote that he

would also like to make a Notice of Appeal with your office.

If there is any cost please let me know so I can make arrangements at once.

There is no indication in the record before us as to what action was taken, if any, in response to appellant's request that a notice of appeal be filed.

were prescribed for me by my doctor. I had been taking all of these drugs steadily for at least seven (7) months prior to the time I entered my plea of guilty in this case. Even though the amounts of drugs I took was limited while I was in jail, I was still permitted to take the drugs prescribed for me by my doctor. I had been out on bail about 3 weeks before I entered my guilty plea;

4. That the night before I entered my plea of guilty I took two (2) capsules of LSD. I had been drinking heavily before I took the LSD. I do not recall exactly what time I took the LSD, but it was in the evening hours; sometime after 7 p.m. * * *.

In this same affidavit, appellant also asserted:

That when I tried to explain to my attorney (a week or ten (10) days later) that I hadn't been in my right mind when I pleaded guilty, and therefore wanted him to withdraw my guilty plea, my attorney persuaded me not to inform the court but to say nothing about the LSD. My attorney told me that in all probability I would not have to do more than one (1) year on the charge anyway, and by getting the other charges dropped I would be coming out ahead in the long run. It was at this conversation that I first learned that the other two (2) charges had been dropped * * *.

Once again the superior court denied appellant's Criminal Rule 35(b) motion without holding an evidentiary hearing.[12] Appellant has brought this appeal from the superior court's denial of his second motion for relief under Criminal Rule 35(b).

In cases where the sentencing court had denied a Criminal Rule 35(b) motion without holding an evidentiary hearing, we said in Knaub v. State [13] that:

If the lower court could determine conclusively that petitioner was entitled to no relief after an examination of the files and records of the case, then it acted properly in denying the petition without hearing. The sole question before an appellate tribunal when confronted with an order denying, without hearing, a Criminal Rule 35(b) motion is whether the prisoner in his application for relief made such a showing as to require a hearing before the lower court.

In this appeal we are of the opinion that the superior court could not have determined that records and files conclusively demonstrated appellant was entitled to no relief. We believe that the Supreme Court of the United States' decision in Machibroda v. United States [14] is pertinent. There the court said in a case arising under 28 U.S.C. section 2255 that:

This was not a case where the issues raised by the motion were conclusively determined either by the motion itself or by the 'files and records' in the trial court. The factual allegations contained in the petitioner's motion and affidavit, and put in issue by the affidavit filed with the Government's response, related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light.

---

12. In the course of his oral decision, Judge Davis stated:

I found specifically that at the time Mr. Widermyre pleaded guilty that he was not under the influence of LSD, that he did make an intelligent and knowing plea of guilty, and that now, many years later, it is too late to attempt to raise something of this kind. A specific hearing was not necessary and the fact that I, in the opinion, indicated that I heard the matter doesn't mean that I held a hearing. What I meant was, as apparent from the opinion, that I had thoroughly considered the file and found that there was no merit in the contention and that accordingly there was no reason for having a full dress hearing and bringing Mr. Widermyre back here. I find that there isn't any merit to the new motion and the motion to vacate the sentence—sentence and judgment will be denied * * *.

13. 443 P.2d 44, 50 (Alaska 1968) (footnotes omitted).

14. 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473, 478–479 (1962).

Nor were the circumstances alleged of a kind that the District Judge could completely resolve by drawing upon his own personal knowledge or recollection.[15]

The subsequent decision of the Supreme Court in Sanders v. United States [16] is also pertinent to the decision we have reached in the case at bar. There the petitioner appeared in federal court without counsel and pled guilty to a robbery charge. Before sentence was imposed, petitioner stated to the trial judge that, "If possible, your Honor, I would like to go to Springfield or Lexington for addiction cure. I have been using narcotics off and on for quite a while." In support of the section 2255 motion for post conviction relief, petitioner alleged at the time of his plea and sentence that he was mentally incompetent as a result of narcotics administered to him while he was incarcerated because of his known addiction. There the Supreme Court said:

> The crucial allegation of the second motion was that petitioner's alleged mental incompetency was the result of administration of narcotic drugs during the period petitioner was held in the Sacramento County Jail pending trial in the instant case. However regular the proceedings at which he signed a waiver of indictment, declined assistance of counsel, and pleaded guilty might appear from the transcript, it still might be the case that petitioner did not make an intelligent and understanding waiver of his constitutional rights. * * * For the facts on which petitioner's claim in his second application is predicated are outside the record. This is so even though the judge who passed on the two motions was the same judge who presided at the

hearing at which petitioner made the waivers, and the later hearing at which he was sentenced. Whether or not petitioner was under the influence of narcotics would not necessarily have been apparent to the trial judge. Petitioner appeared before him without counsel and but briefly. That the judge may have thought that he acted with intelligence and understanding in responding to the judge's inquiries cannot 'conclusively show,' as the statute requires, that there is no merit in his present claim.

■ Here the occurrence upon which appellant predicates his claim of incompetency at the time he pleaded guilty took place outside the courtroom. In this situation the files and the record do not conclusively show that there is no merit to appellant's assertions. The claims that appellant had taken drugs some 12 hours prior to his change of plea, and that at the time he appeared in court to enter his change of plea he was under the influence of drugs and thus rendered incompetent, were not of a type that could be completely resolved by the trial judge's examination of the files and record, and by drawing upon his own personal knowledge or recollection of the events in question. Despite the apparent regularity of the competency hearing, the change of plea proceeding, and the sentencing proceeding, the possibility still exists that appellant did not knowingly and understandingly plead to the forgery charge. If appellant were under the influence of drugs when he pleaded guilty, this fact would not have necessarily been apparent to the trial judge who accepted appellant's plea.[17] We hold the allegations

15. The movant's affidavit in *Machibroda* had set out detailed factual allegations concerning alleged promises on the part of the prosecuting attorney as to the sentence movant would receive.

16. 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148, 163–164 (1963).

17. See Briscoe v. United States, 129 U.S. App.D.C. 146, 391 F.2d 984, 988–989 (1968), where the court said:

> In this case, the judge who sentenced Briscoe was not the same judge who took the plea of guilty. Although 28 U.S.C. § 2255 provides that a motion thereunder shall be made to 'the court which imposed the sentence,' we think its purpose is better served, where collateral attack is predicated upon an infirmity in the taking of the guilty plea, if the motion is disposed of by the plea judge, if only because he may have some recollection of the prior proceedings.

contained in appellant's affidavit in support of his second Criminal Rule 35(b) motion, under the circumstances of this record, were sufficient to require an evidentiary hearing. As was said in Machibroda v. United States:[18]

> There will always be marginal cases, and this case is not far from the line. But the specific and detailed factual assertions of the petitioner, while improbable, cannot at this juncture be said to be incredible. If the allegations are true, the petitioner is clearly entitled to relief. Accordingly, we think the function of 28 USC § 2255, 28 U.S.C.A. § 2255 can be served in this case only by affording the hearing which its provisions require.[19]

Although this case is "not far from the line," we believe that appellant has alleged sufficient facts to preclude decision on the merits of his claim by exclusive resort to the files and record. In addition to appellant's second affidavit,[20] the record shows that both of appellant's attorneys requested a psychiatric examination of appellant because of the difficulties they had encountered in attempting to communicate with him. The record of the competency hearings discloses that appellant was subjected to daily medications, and that his own counsel suspected he was taking drugs. Additionally, the record and files do not conclusively show that appellant did not in fact take drugs after the competency hearing was concluded. Nor do the files and record conclusively show that at the time of the change of plea proceedings were held, appellant was not in fact rendered mentally incompetent as the result of his ingestion of drugs.

In regard to whether or not the presence of appellant is required at fact hearings growing out of post conviction petitions, in Thompson v. State[21] we noted the following from Sanders v. United States:[22]

> On remand, a hearing will be required. This is not to say, however, that it will automatically become necessary to produce petitioner at the hearing to enable him to testify. Not every colorable allegation entitles a federal prisoner to a trip to the sentencing court. * * * This does not mean that a prisoner can be prevented from testifying in support of a substantial claim where his testimony would be material. However, we think it clear that the sentencing court has discretion to ascertain whether the claim is substantial before granting a full evidentiary hearing. * * *

We hold that appellant was entitled to an evidentiary hearing under our former Criminal Rule 35(b), and that it was error on the trial court's part to have ruled that the files and record conclusively showed that appellant was entitled to no relief. The case is remanded for a hearing in conformity with the foregoing.[23]

18. 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473, 479 (1962).

19. In Nunley v. United States, 364 F.2d 825 (10th Cir. 1966), the court said:
Nipp and Ellison hold that when one of the grounds asserted for relief under a § 2255 motion is mental incompetence at the time of a guilty plea, the matter may not be disposed of without a hearing. This principle was reasserted in McDonald v. United States, 10 Cir., 341 F.2d 378, and in Butler v. United States, 10 Cir., 361 F.2d 869. No further comment is required. Appellant is entitled to the evidentiary hearing which he seeks on his claim of mental incompetency at the time of plea.
See also Reed v. United States, 391 F.2d 4, 5–6 (9th Cir. 1968); Juelich v. United States, 316 F.2d 726, 727 (5th Cir. 1963); Alexander v. United States, 290 F.2d 252, 254 (5th Cir. 1961).

20. Timeliness is not a prerequisite to bringing a motion under Crim.R. 35(b). See Heflin v. United States, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407, 411 (1959).

21. 412 P.2d 628, 636–637 (Alaska 1966).

22. 373 U.S. 1, 20–21, 83 S.Ct. 1068, 10 L.Ed.2d 148, 164 (1963).

23. See Nichols v. State, 425 P.2d 247 (Alaska 1967), as to the right of an indigent movant, under Crim.R. 35(b), to court-appointed counsel once it is determined that an evidentiary hearing is required.