King **HAIRSTON**, Petitioner,

v.

**J. D. COX**, Superintendent, Virginia State
Penitentiary, Respondent.

Civ. A. Nos. 69-C-55-D, 70-C-6-D.

United States District Court,
W. D. Virginia,
Danville Division.

April 29, 1970.

Gerald L. Baliles, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

King Hairston, a state prisoner, has filed two petitions for a writ of habeas corpus seeking relief pursuant to 28 U.S. C. § 2241. The first (Civil Action No. 69–C–55–D) was filed with this court on September 30, 1969; the second (Civil Action No. 70–C–6–D) was filed on February 3, 1970. For purposes of expediency and efficiency, the two petitions are consolidated and judgment will herein be rendered on both.

By his petition, Hairston attacks a conviction in the Circuit Court of Henry County on April 8, 1942, for first degree murder. Petitioner, represented by court-appointed counsel, entered a plea of not guilty and was tried by a jury. A sentence of life imprisonment was imposed upon this conviction.

■ While no appeal was taken from the conviction, petitioner has exhausted the available state habeas corpus remedies on the claims he presents to this court. A petition for a writ of habeas corpus was filed on November 13, 1967, with the Circuit Court of Henry County. After appointing counsel to represent petitioner, a plenary hearing was held. Thereupon, that court dismissed the petition. On April 29, 1969, the Virginia Supreme Court of Appeals affirmed the Circuit Court's dismissal of the petition. Petitioner has exhausted his available state remedies in compliance with 28 U.S.C. § 2254.

While the petitions are unclear, petitioner appears to seek relief on the following grounds: (1) Systematic exclusion of Negroes from the grand and petit jury; (2) a warrantless arrest; (3) an improper preliminary hearing; (4) no indictment in the present record (5) an improper jury verdict; and (6) ineffective representation of counsel.

Petitioner has alleged that both the grand and petit juries in his case were all white. The facts surrounding this claim appear as follows:

In 1942 the Henry County population was approximately 20 to 30% Negro. The testimony at the plenary hearing shows that there were no Negroes on the grand jury which indicted petitioner. There was possibly one Negro on the twenty man jury panel for petitioner's trial. The three Henry County jury commissioners in 1942 were all white.

The jury commissioners selected prospective jurors from capitation lists, from the telephone book, and from their own personal knowledge. After 1935 Judge Clements directed the jury commissioners to include Negroes on the grand and petit juries.

The evidence does not disclose what percentage of Negroes were available and qualified to serve on these juries as compared with the qualified white population. The record is even devoid of any figures disclosing the percentage of Negroes on the jury panel list of 1942.

■ Although the evidence discloses that Negroes were underrepresented on

petitioner's grand and petit juries, these are not controlling factors. A defendant is not constitutionally entitled to a proportionate number of members of his race on the petit or grand juries which try or indict him. State of Virginia v. Rives, 100 U.S. 313, 25 L.Ed. 667 (1879).

In order to obtain relief, petitioner must demonstrate purposeful discrimination based on race. Purposeful discrimination may not be assumed or proved by the mere assertion. Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). The burden of proof initially is on the petitioner. Swain v. State of Alabama, supra; Tarrance v. State of Fla., 188 U.S. 519, 23 S.Ct. 402, 47 L.Ed. 572 (1903).

Petitioner can make out a prima facie case of jury discrimination by proving a *substantial* disparity between the percentage of Negro residents in the county as a whole and the percentage of Negroes on the jury list. Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970). See also, Coleman v. Alabama, 389 U.S. 22, 88 S.Ct. 2, 19 L.Ed.2d 22, (1967); Norris v. State of Alabama, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935). Merely showing that the jury panel was selected from a segregated list, without more, does not make out a prima facie case of discrimination. Nor is a prima facie case made by showing a mere unequal proportion of Negroes in the community to those on the jury panel. Petitioners must demonstrate that this disparity was the result of a purposeful or studied attempt to include or exclude a specified number of Negroes. Swain v. State of Alabama, supra. Under-representation by as much as 10% was held in *Swain* not to make out a prima facie case of discrimination. A prima facie case can, however, be made out by showing both that the jury panel was drawn from a segregated list *and* that there was an unequal proportion of the petitioner's race on the jury panel for the year he was tried. Jones v. Georgia, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967);

Sims v. Georgia, 389 U.S. 404, 88 S.Ct. 523, 19 L.Ed.2d 634 (1967); Whitus v. State of Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). Finally, a prima facie case cannot be made out by showing that there are not now or never have been any Negroes on the jury commission. Carter v. Jury Commission of Greene County, 396 U.S. 320, 90 S.Ct. 549, 24 L.Ed.2d 549 (1970).

As to what other matters make out a prima facie case, I am not prepared to say. It is sufficient to note that petitioner has not made out a prima facie case under any of the above standards. Nor are any other matters presented in the record which make out a prima facie case of discrimination. Petitioner has failed to provide any figures on the percentages of Negroes on the Henry County jury lists of 1942. Because of the long delay in making this claim, petitioner has restricted his means of proof. The jury list has been destroyed and all of the important witnesses are dead—including the Judge of the Court, the Clerk of the Court, and the jury commissioners. While I do not impose the strict forfeiture procedure set out in Wade v. Peyton, 378 F.2d 50 (4th Cir. 1967), it is clear that petitioner is the source of his own difficulties. The facts are not sufficient to show any discrimination in the selection of Negroes for the Henry County jury panels of 1942. Rather than showing discrimination, the facts demonstrate the fairness of the jury selection. Judge Clements was careful that Negroes were called for jury duty in his court. In the absence of evidence to the contrary. I must assume that there was no systematic exclusion of Negroes from the grand and petit juries.

Petitioner also complains that he was arrested without a warrant. The plenary state court, after a full and adequate hearing, determined that there was a warrant in this case. The evidence very strongly supports this conclusion and for that reason I accept the state court's determination. Further-

more, an unlawful arrest, in itself, presents no constitutional issue unless something occurred as a result thereof to deny the petitioner a fair trial. Delano v. Crouse, 327 F.2d 693 (10th Cir. 1964); Howard v. Allgood, 272 F.Supp. 381 (E.D.La.1967); United States ex rel. Williams v. Myers, 196 F.Supp. 280 (E.D.Pa.1961).

■ Petitioner alleges that he was given a preliminary hearing in the city court and sent to the county grand jury. The matter of a preliminary hearing is merely procedural under Virginia law. Snyder v. Commonwealth, 202 Va. 1009, 121 S.E.2d 452 (1961). I am not convinced that even the failure to give a preliminary hearing would raise a federal constitutional issue. Cf. Vess v. Peyton, 352 F.2d 325 (4th Cir. 1965). In 1942, the Circuit Court of Henry County was the only Court of Record for the City of Martinsville and Henry County. Therefore, every defendant who was given a preliminary hearing in the Trial Justice Court of the City would be sent to the Circuit Court of Henry County for trial. While the testimony indicates that petitioner was given the preliminary hearing in the County Court, I can see no constitutional issue if the facts were as petitioner alleged.

The petitioner alleges that there was no indictment in his case. After the plenary hearing, the state court held, " * * * unquestionably there was an indictment and I don't think that there can be a serious contention otherwise." The evidence amply supports this conclusion and this court relies thereon in rejecting this claim.

Petitioner next contends that the jury verdict was improper in that the jury did not say what they found him guilty of. In rejecting this claim, the state court indicated that at times the form of the jury verdict is not correct and must be changed. The court found that if an amendment was made, it was only to form and did not affect the penalty. This court is satisfied with that factual determination.

The remainder of petitioner's allegations relate to ineffective representation of counsel. Petitioner claims that (1) the order of the trial court does not show that he had a lawyer at the trial; (2) that counsel failed to put four witnesses on the stand; and (3) that he asked his lawyer to appeal and the lawyer denied the request.

Petitioner's first contention is frivolous. Not even the petitioner himself denies that he did in fact have counsel. Although one of the petitioner's counsel is dead, the other counsel did testify at the plenary hearing.

■ Whether to put certain witnesses on a stand are matters relating to trial tactics. Mistakes in trial tactics do not amount to ineffective representation of counsel unless they make a farce of the trial. Tompa v. Commonwealth of Virginia ex rel. Cunningham, 331 F.2d 552 (4th Cir. 1964); Snead v. Smyth, 273 F.2d 838 (4th Cir. 1959). Petitioner stated that four witnesses were summoned but they were never put on the stand. One of the petitioner's counsel testified that they always followed up a lead on a witness to see if he could help the case. The fact that counsel summoned the witnesses petitioner speaks of demonstrates that they were cognizant of what the witnesses had to offer. Petitioner has not demonstrated that the failure to call these witnesses made a farce of his trial. The evidence points to the fact that petitioner had extremely competent counsel. One of petitioner's counsel was Kennon C. Whittle, who is now deceased. Mr. Whittle later became a Justice of the Virginia Supreme Court of Appeals. Petitioner's other counsel was one of Mr. Whittle's law partners. Both men had considerable experience in the criminal law field.

Petitioner's final contention is that counsel, on request, refused to appeal petitioner's conviction. Petitioner testified that he requested Mr. Whittle to appeal his case and was refused because of the lack of funds. Petitioner's living counsel testified that there was never

any question concerning money. The plenary court did not believe there was anything to this claim. Obviously it did not believe petitioner was denied an appeal for the reason of money and neither does this court.

■ The court must consider the implications of Nelson v. Peyton, 415 F.2d 1154 (4th Cir. 1969), which held that the failure to inform a client of his right to appeal amounts to ineffective representation of counsel. While I have considerable doubt on the soundness of applying *Nelson* retroactively, I am not compelled to herein determine that issue. The state court obviously relied on the testimony of petitioner's counsel in this matter. He testified:

A. I remember this, that we talked with King Hairston after the verdict was in. I do remember that.

Q. Did you talk to him about an appeal?

A. We talked about the trial. Not only that case but whenever a case of that kind was over we always [talked with] the client immediately after the verdict was in. If we had any motion to make we made it, but we always made it a point * * * immediately after trial to take him, usually right in the room over there called the attorney's office with a sign on the door, and talk to the defendant about what had happened and I am sure that we talked to King Hairston on that day. I'm sure that we told him that there had been no error in the trial, we'd gotten all the instructions we asked for, the witnesses were here, and that he'd have to make up his mind to go on down to the penitentiary and serve his time. And if he behaved himself he'd probably stand—be in good shape to get out on parole. I'm quite sure, we invariably said "we don't have anything to note an appeal on, there was no error in this trial" if there wasn't. If there was, we immediately started talking about an appeal, if the Court had made an error, to our client then, not some later date.

Counsel did talk with petitioner concerning any rights to appeal he may have had. Counsel did provide their best advice concerning an appeal and I see no error even under the strict requirements of *Nelson*.

For the foregoing reason, it is adjudged and ordered that the petition for a writ of habeas corpus be dismissed and the relief denied.