King **HAIRSTON**, Petitioner,

v.

**J. D. COX, Superintendent Virginia State
Penitentiary, Respondent.**

**Civ. A. Nos. 69–C–55–D, 70–C–6–D.**

United States District Court,
W. D. Virginia,
Danville Division.

July 13, 1973.

Gordon M. Kent, Law Offices Kent &
Kent, Altavista, for petitioner.

Robert E. Shepherd, Jr., Asst. Atty.
Gen., Richmond, Va., for respondent.

## OPINION

TURK, District Judge.

Petitioner, King Hairston, was tried
and convicted of first degree murder in

April of 1942 in the Circuit Court of Henry County, Virginia. He did not appeal. In 1967, petitioner filed for a writ of habeas corpus in the Circuit Court of Henry County in which he alleged the systematic exclusion of Blacks from the grand and petit juries which indicted and tried him. A hearing was held in September of 1968 resulting in a dismissal of his writ, and his appeal from this dismissal was denied by the Virginia Supreme Court.

In 1969, petitioner filed for a writ of habeas corpus in this court, 311 F.Supp. 1084, which dismissed the petition on the basis of the record made in the Henry County Circuit Court. This dismissal was appealed to the Fourth Circuit Court of Appeals which disagreed with the disposition below concerning the allegation of systematic exclusion of Blacks from jury duty.[1] Specifically the Fourth Circuit Court of Appeals found that petitioner had proved a prima facie case of systematic racial exclusion and remanded the case to this court in order for the state to attempt to rebut or explain. A petition for a rehearing *en banc* was denied and the state appealed to the United States Supreme Court. The Supreme Court denied the petition for a writ of certiorari on May 14, 1973.

Two questions must now be decided by this court. First, whether the state has rebutted or explained the prima facie case of racial exclusion that petitioner has established, and second, whether the recent decisions of the United States Supreme Court in the cases of Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973) and Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) require a decision that petitioner has waived the right to challenge the grand and petit jury selection practices of Henry County, Virginia at the time of his indictment and conviction.

## REBUTTAL OF PETITIONER'S PRIMA FACIE CASE

The Fourth Circuit Court of Appeals in reversing and remanding this case relied on the evidence adduced at the state habeas corpus hearing and concluded that this evidence supported a decision that petitioner had established a prima facie case of racial exclusion. At the time of petitioner's conviction, the Virginia Code provided for the judge of the circuit court to select forty-eight grand jurors to serve for twelve months. From these, the clerk would select five to seven persons for service during each court term. The requirements for service were that the grand jurors be male citizens twenty-one years of age "of honesty, intelligence, and good demeanor, and suitable in all respects." Va. Code Ann. § 4852 (1936). Petit jurors were chosen by a three-member jury commission appointed by the circuit judge, which submitted one to three hundred names from which the clerk would draw, from a closed box before witnesses, twenty-four names for use at a term of court. Va.Code Ann. §§ 4895, 5986, 5988 and 5992 (1936). The commissioners were guided in their choice only by the requirement that they choose only male resident citizens twenty-one years old who were "well-qualified." Va.Code Ann. §§ 5984, 5988 (1936).

In summing up the evidence from the state habeas corpus hearing, the Court of Appeals pointed out that there were no Blacks on either the grand or petit juries which indicted or convicted petitioner although approximately 20% of Henry County was non-white. John H. Mathews, who is the present Circuit Court Clerk in Henry County and who was the Deputy Clerk in 1942, testified at the state hearing that the jury commissioners, who were all white, used voting lists containing racial disignations for their source of jurors. The Court of Appeals further pointed out that the judge and commissioners relied on repu-

---

1. The opinion of the Fourth Circuit Court of Appeals is reported at 459 F.2d 1382 (4th Cir. 1972).

tation information from their personal knowledge and knowledge of potential jurors' neighbors. Although the state judge found that after 1935 Blacks were included on jury lists at the direction of the presiding judge, the Court of Appeals found it significant that most of the witnesses could only remember a single case in which Blacks actually served, and another witness rather clearly indicated that Black representation on juries was only token in character.

The Court of Appeals next applied the facts developed at the state plenary hearing to the standards set forth in the cases of Witcher v. Peyton, 405 F.2d 725 (4th Cir. 1969), and Stephens v. Cox, 449 F.2d 657 (4th Cir. 1971). In *Witcher* the court found three factors which, although short of direct proof, were sufficient to establish a prima facie case of racial exclusion in jury selection. First, the court found that the judge and jury commissioners who were all white selected jurors from among the "best people" known to them. The inevitable result of this factor was that venires were heavily weighted in favor of white people. Second, the court noted that the records from which the names of potential jurors were selected were segregated which presented *the opportunity for discrimination.* Finally, the court pointed out that the representation of Blacks on grand juries and petit juries was disproportionate in a manner which was described as "recurrent, systematic, and relatively uniform in degree." 405 F.2d at 728.

In Stephens v. Cox, supra, the Fourth Circuit found a prima facie case of racial exclusion on juries upon a showing of substantial disparity between the proportion of presumptively qualified Blacks in the general population and their proportion on juries if such disparity was coupled with other evidence of discrimination or a showing that the selection procedures provided an opportunity for discrimination.

In the present case, the Fourth Circuit found that the three factors set forth in *Witcher,* supra, had been estab-lished at the state plenary hearing. It also found that the disparity between adult Blacks presumptively qualified for jury duty and their actual representation on juries was greater in the present case than in Stephens, and that the opportunity for racial discrimination was present under substantially the same statutes and procedures as had been employed in *Stephens.*

Following a remand of this case from the Fourth Circuit, a hearing was held in Danville, Virginia, on November 10, 1972, in order for the state to attempt to rebut or explain the prima facie case of racial discrimination. The state called John H. Mathews, the Clerk of the Circuit Court of Henry County, who in 1942 had been the Deputy Clerk of that court. He testified that he had no recollection of there being any Blacks on the jury panel used in petitioner's case. He stated that since 1935 it was the practice to have Blacks represented on the jury venire and named two persons who he thought were black and had served on jury panels in the period from 1935 until 1942. Mr. Mathews was unable to locate any master jury lists for the period in question and had no specific recollection of any Blacks actually serving on the final juries of twelve. He opined that any Blacks on a panel would probably have been struck. He stated that there was a substantial disparity in the education between Blacks and the White people of Henry County at the time due to a lack of opportunity for Blacks. As for the actual selection of jury members, he testified that the commissioners were told by the judge to pick people that "they would like to try them", and accordingly made the jury list from people that they personally knew or who were recommended by persons they knew. He also testified that names of jurors were taken from the voting list in which names were designated by race.

The state also called Percy C. Nowlin, who had been a state trooper stationed in Henry County from 1935 until 1947. He testified that he was frequently

present during criminal terms at the Circuit Court of Henry County. He stated that Blacks were summoned for jury duty occasionally, but their appearance was the exception rather that the rule. He remembered one black man serving on several juries but had no other recollection of Blacks actually serving on juries. He also testified that from 1942 until 1947 there was an "awareness" of having a jury panel that included Blacks particularly if there was a black defendant.

Petitioner called a single witness, Josh Pritchard, who had been a resident of Martinsville and Henry County since 1927. He testified that he attended trials in the circuit court several times a year. He stated that he never saw a Black on either the jury or jury panel during the period in question. He expressed the feeling that it was a "foregone conclusion" in Henry County that the jury was all white. He stated that he first recalled seeing a Black actually serve on a jury in the late fifties. Mr. Pritchard testified to having known petitioner for a number of years.

■■ Applying the testimony summarized above to the factors mentioned by the Fourth Circuit in *Witcher* and *Stephens,* supra, it is apparent that the state has not rebutted the prima facie case established by Mr. Hairston. There was evidently no way to rebut the fact that the jury panels were selected from segregated voting lists. Nor was the state able to rebut the fact that the judge and jury commissioners limited their selections of jury members to their personal acquaintances or persons recommended by such acquaintances with the standard that those selected be persons the jury commissioners "would like to try them." What the state did do in the hearing was to show that since 1935 Blacks were not completely excluded from jury duty and that probably a Black would occasionally be selected. But even accepting such testimony in a light most favorable to the state and disregarding for the moment that the testimony of petitioner's witness was substantially to the contrary, the only inference that can be drawn from such evidence is that there was an effort to have a token inclusion of Blacks on the master jury list. That such token inclusion will be condemned as readily as total exclusion is well established. Cassell v. Texas, 339 U.S. 282, 286, 70 S.Ct. 629, 94 L.Ed. 839 (1950); Brown v. Allen, 344 U.S. 443, 470–471, 73 S.Ct. 397, 97 L.Ed. 469 (1953). Accordingly, it is the conclusion of this court that the prima facie case of racial exclusion has not been rebutted or explained.

## WAIVER OF PETITIONER'S RIGHT TO CHALLENGE THE JURY SELECTION PROCEDURES

The second contention with which this court must deal is the argument raised by respondent that petitioner has waived his right to challenge the composition of the grand and petit juries which indicted and convicted him because of the delay in raising such a claim. It will be recalled that petitioner was convicted in 1942 but did not challenge his conviction until 1968. The respondent did not previously directly make the argument that petitioner had waived his right to challenge these juries, although the delay of twenty-six years has been referred to and Judge Bryan of the Court of Appeals dissented to the decision reversing and remanding this case in part because of this delay.

The reason for respondent not directly asserting this argument was that it felt that the case of McNeil v. North Carolina, 4 Cir., 368 F.2d 313 (1966) would have prevented such an argument from succeeding. In *McNeil* petitioner challenged his 1959 conviction for second degree burglary on the basis of systematic racial exclusion from the juries which indicted and tried him. This challenge was asserted for the first time in 1963 in a federal habeas corpus petition. The Fourth Circuit relied on the definition of waiver in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461

(1938)—"an intentional relinquishment or abandonment of a known right or privilege"—in rejecting the argument that petitioner had waived his right to challenge the juries. With this precedent in mind, it is understandable why respondent chose not to rely on such an argument since it would have been virtually impossible to show that petitioner in 1942 knew of his right to challenge the juries which indicted and tried him and that he understandingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts.

Respondent now urges this court that although the Supreme Court denied a writ of certiorari to the decision by the Fourth Circuit Court of Appeals in this case, it nevertheless decided two cases on April 17, 1973 which changed the law as to waiver in the case of a claim of jury discrimination.

The case of Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973) referred to by respondent is not directly relevant to the case at bar, the only similarity being that it involved a claim by a habeas corpus petitioner that Blacks had been systematically excluded from the grand jury which indicted him in 1948. The Supreme Court rejected this challenge on the basis of the fact that petitioner had pleaded guilty at his trial. The Court relied on the cases of Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) and Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970) in holding that petitioner's guilty plea foreclosed independent inquiry into issues other than the question of whether the guilty plea was voluntary.

The second case relied on by respondent is of greater relevance and warrants a more detailed analysis and comparison to the case now before this court. In Davis v. United States, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the Supreme Court held that pe-titioner, a federal prisoner, had waived the right to challenge the systematic exclusion of qualified black jurymen from the grand jury which indicted him by not raising the challenge before trial. Petitioner had been convicted of bank robbery in 1968 and sentenced to 14 years in prison. The trial judge had given petitioner 30 days in which to make any pre-trial motions, and a motion challenging the legality of his arrest had been made. Almost three years later he filed a motion under 28 U.S.C. § 2255 challenging the method of selecting the grand jury which had indicted him. The Court rejected petitioner's argument that because he was alleging the violation of a fundamental constitutional right, his collateral attack would not be precluded unless it was established that he understandingly and knowingly waived this claim.

In so holding the Supreme Court relied upon Rule 12(b)(2) of the Federal Rules of Criminal Procedure which requires that all defenses and objections based upon the institution of the prosecution or indictment must be raised by motion before the trial or they will be waived unless the court for good cause shown determines that relief from the waiver should be granted. The Court did not explicitly overrule the earlier case of Kaufman v. United States, 394 U.S. 217, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969) which had held that a federal prisoner did not waive the right to assert a claim of unconstitutional search and seizure in a collateral proceeding. The Court in *Kaufman* had held that the circumstances under which a federal court must review claims of federal prisoners in a § 2255 proceeding were the same as those requiring habeas corpus review of constitutional claims of state prisoners. Thus under *Kaufman* there would have been a waiver of the right to assert a constitutional claim only upon a showing that there was a knowing and deliberate by-pass of appellate procedures for raising the claim. In deciding that *Davis* was not controlled by *Kaufman* the Court pointed to the express

waiver provision of Rule 12(b)(2) as the distinguishing factor.

The Court in *Davis* adopted a significantly different approach to waiver than that expressed in *Kaufman*. Whereas the earlier approach had required a showing that a petitioner had knowingly and understandingly by-passed orderly procedures in order to preclude having his constitutional claim reviewed in a collateral proceeding, the Court in *Davis* held that there must be a showing of actual prejudice or "cause shown" in order for a petitioner to succeed on grounds of a claim of discrimination in jury selection. The Court noted that the grand jury which indicted petitioner also indicted his white accomplices, that the case against petitioner was a strong one, and that there were no racial overtones. Thus the Court concluded that there was no cause shown for collateral relief.

Respondent argues that the new standard for federal prisoners asserting claims for the first time in § 2255 proceedings should be equally applicable to state prisoners if the state had any procedural rules, statute or clearly deliniated decisions that would be comparable to Federal Rule of Criminal Procedure 12(b)(2). In support of this argument respondent has brought to the court's attention that the Code of Virginia in force at the time of petitioner's trial provided for the waiver of objections to the jury selection procedures if not made before the jury was sworn.[2]

Initially the question that must be faced is whether the *Davis* case should control the case at bar. Davis was concerned with a federal prisoner asserting a claim of unconstitutional jury selection procedures under 28 U.S.C. § 2255 whereas petitioner in the present case is raising his claim under 28 U.S.C. § 2254. Additionally, the *Davis* decision involved an interpretation of Rule 12(b)(2) of the Federal Rules of Criminal Procedure which had no application to Mr. Hairston's trial. Although this court is aware that the Supreme Court has held that the circumstances under which a federal court must review constitutional claims presented by a state prisoner in a federal habeas corpus proceeding are the same as for a federal prisoner in a § 2255 proceeding (with a single exception not here relevant), *Kaufman v. United States*, 394 U.S. 217, 226–227, 89 S.Ct. 1068, 22 L.Ed.2d 227 (1969), it is noteworthy that the Court in *Davis* did not purport to overrule past decisions but merely applied a well-established Federal Rule of Criminal Procedure to the case before it. Thus, the Court may have reaffirmed Rule 12(b)(2) without meaning to disturb the law of waiver applicable to state prisoners under 28 U.S.C. § 2254. Whether or not the Supreme Court will extend the interpretation of Rule 12(b)(2) to similar state rules of procedure remains to be seen, but until it does so this court is bound by the decisions of the Supreme Court holding that a state prisoner may assert constitutional claims unless he understandingly and knowingly forwent the privilege of asserting his federal claim in the state court.

The case at bar is still controlled by the case of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) which was not disturbed by the decision in

---

2. Section 4895 of the 1936 Code of Virginia provided in pertinent part as follows:

"No irregularity in any writ of venire facias or in the drawing, summoning, returning, or impaneling of jurors, or in making out or copying or signing or failing to sign the list or in drawing more persons than four in excess of the number to be summoned, shall be cause for summoning a new panel or for setting aside a verdict or granting a new trial, unless objection thereto specifically pointed out, was made before the jury was sworn, and unless it appears that such irregularity, or error, or failure, was intentional or such as to probably cause injustice to the Commonwealth or to the accused; and no judgment shall be arrested or reversed for the failure of the record to show that there was a venire facias, unless made a ground of exception in the trial court, before the swearing of the jury."

*Davis.* In Fay v. Noia, supra, at 439, 83 S.Ct. at 849, the Court stated the rule of waiver as follows:

> The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 —"an intentionel relinquishment or abandonment of a known right or privilege"—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forwent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical, or any other reasons that can fairly be described as the deliberate bypassing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claim on the merits. . . . At all events we wish it clearly understood that the standard here put forth depends on the considered choice by petitioner. (citations omitted). A choice made by counsel not participated in by petitioner does not automatically bar relief. Nor does a state court's finding of waiver bar independent determination of the question by the federal courts on habeas, for waiver affecting federal rights is a federal question.

■ There has been no contention that rule of waiver stated above has been overruled by *Davis*, and respondent's argument is essentially that this court should anticipate the Supreme Court's expansion of the *Davis* decision to cover proceedings by state court prisoners under 28 U.S.C. § 2254. This court does not perceive its role as one of anticipating the course that may be taken by the Supreme Court particularly when there are cases which control the case at bar that have not been overruled. This is particularly true with respect to the application of the *Davis* decision to the case at bar since it is certainly possible that this decision will be limited to claims raised in § 2255 proceedings and which were governed in the trial court by the Federal Rules of Criminal Procedure. The Supreme Court could easily justify applying a more stringent waiver provision to federal prisoners proceeding under § 2255 than to a state prisoner seeking federal habeas corpus relief under § 2254. For example, the necessity of federal courts having the "final say" with respect to federal law; the inadequacy of state procedures to raise and preserve federal claims; the concern that state judges may be unsympathetic to federally created rights; and the institutional restraints on the Supreme Court's exercise of certiorari jurisdiction are all valid considerations which do not obtain with respect to federal prisoners. See Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Thus, it is the opinion of this court that it would be inappropriate to anticipate the expansion of the *Davis* decision to cover proceedings by a state prisoner under 28 U.S.C. § 2254. Accordingly, the standard for waiver of constitutional rights set forth in the case of Fay v. Noia, supra, applies to the case at bar.

■ Respondent does not contend that petitioner has waived his right to assert his claim under the standard set forth in Fay v. Noia, supra, and *McNeil v. North Carolina*, 368 F.2d 313 (4th Cir. 1966), and apparently such an argument would be fruitless. Since there has been no waiver and since the state has not rebutted the prima facie case of systematic racial exclusion from the grand and petit juries which indicted and tried petitioner, a writ of habeas corpus will be granted unless the state chooses to indict and try petitioner again by constitutionally acceptable procedures within a reasonable time.

An appropriate order will be entered in accordance with this opinion.